267 F.3d 147 (2nd Cir. 2001)
 CHARLES ROBINSON, SHARON E. MACK, JAMES OLIVER, DARRYLL F. SIMPSON, VERONICA CARIDAD, DONALD HINES, JAMES JACKSON, LORD TAYLOR, EARL VAUGHN, DANIEL CANADA, MARVIN EDWARDS, ERIC JONES AND RAYMOND NORRIS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS-APPELLANTS,
v.
METRO-NORTH COMMUTER RAILROAD CO., DEFENDANT-APPELLEE.
 Docket Nos. 00-9417(L), 00-9423(C)
August Term 2000
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: May 31, 2001
Decided October 9, 2001
 
 Plaintiffs-appellants appeal from a September 29, 2000 judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, District Judge) denying plaintiffs' motions for class certification and bifurcation and directing entry of judgment dismissing the action. See Robinson v. Metro-North Commuter R.R., 197 F.R.D. 85 (S.D.N.Y. 2000).
 For the reasons set forth below, the judgment is vacated and the district court is instructed to certify plaintiffs' disparate impact claim for Rule 23(b)(2) class treatment, see Fed. R. Civ. P. 23(b)(2), and to consider whether the pattern-or-practice disparate treatment claim is appropriate for (b)(2) certification in light of the standard we set forth today. If the court determines that (b)(2) certification of the pattern-or-practice claim is inappropriate, it shall bifurcate the claim and certify the liability stage of that claim for (b)(2) class treatment, see Fed. R. Civ. P. 23(c)(4)(A).[Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted]
 Alan L. Fuchsberg, The Jacob D. Fuchsberg Law Firm, New York, Ny, for Plaintiffs-Appellants.
 Myron D. Rumeld, Proskauer Rose, Llp, New York, Ny, for Defendant-Appellee.
 Wendy R. Fleishman, Lieff, Cabraser, Heimann & Bernstein, Llp (Coalition of Labor Union Women), New York, Ny; Barbara R. Arnwine (Lawyers' Committee for Civil Rights Under Law), Washington, Dc; Antonia Hernandez (Mexican American Legal Defense and Educational Fund), Los Angeles, Ca; Karen K. Narasaki (National Asian Pacific American Legal Consortium), Washington, Dc; Dennis C. Hayes (National Association for the Advancement of Colored People), Baltimore, Md; Paula A. Brantner (National Employment Lawyers Association), San Francisco, Ca; Marcia D. Greenberger (National Women's Law Center), Washington, Dc; Brad Seligman (Impact Fund), Berkeley, Ca; for Amici Curiae on behalf of Plaintiffs-Appellants.
 Ann Elizabeth Reesman, McGuiness Norris & Williams (Equal Employment Advisory Council), Washington, Dc; for Amicus Curiae on behalf of Defendant-Appellee.
 Before: Walker, Chief Judge, Calabresi and Pooler, Circuit Judges.
 John M. Walker, Jr., Chief Judge.
 
 
 1
 Plaintiffs-appellants (the "Class Plaintiffs") appeal from a September 29, 2000 judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, District Judge) that denied Class Plaintiffs' motions for class certification and bifurcation, and that directed entry of judgment in favor of defendant-appellee Metro-North Commuter Railroad ("Metro-North"). See Robinson v. Metro-North Commuter R.R., 197 F.R.D. 85 (S.D.N.Y. 2000) ("Robinson II").
 
 
 2
 The district court's judgment dismissing the action is vacated. On remand, the district court is instructed to certify the Class Plaintiffs' disparate impact claim for Rule 23(b)(2) class treatment, see Fed. R. Civ. P. 23(b)(2), and consider whether the pattern-or-practice disparate treatment claim is appropriate for (b)(2) certification in light of the standard we set forth herein. If the court determines that (b)(2) certification of the pattern-or-practice claim is inappropriate, it shall bifurcate the claim, see Fed. R. Civ. P. 42(b), and certify the liability stage of the claim for (b)(2) class treatment, see Fed. R. Civ. P. 23(c)(4)(A).
 
 BACKGROUND
 A. The Allegations
 
 3
 The background of this case is substantially detailed in Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 286-90 (2d Cir. 1999) ("Caridad") (reversing the denial of class certification, see Robinson v. Metro-North Commuter R.R., 175 F.R.D. 46 (S.D.N.Y. 1997) ("Robinson I")). Only those facts relevant to this appeal are recited below.
 
 
 4
 The Class Plaintiffs are present and former Metro-North employees who are African American. They bring this putative class action against defendant Metro-North on behalf of "all African-American employees of Metro-North for the period from 1985 through 1996--an estimated 1,300 persons." Caridad, 191 F.3d at 286. Metro-North is a public benefit corporation responsible for providing commuter rail transportation between New York City and its northern suburbs. It has approximately 5,700 employees in 220 different occupations spread over 37 departments.
 
 
 5
 The Class Plaintiffs assert both pattern-or-practice disparate treatment and disparate impact claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Specifically, they challenge Metro-North's company-wide policy of delegating to department supervisors discretionary authority to make employment decisions related to discipline and promotion. Relying on statistical and anecdotal evidence, the Class Plaintiffs argue that this delegated authority has been "exercised in a racially discriminatory manner and has a disparate impact on African-American employees." Caridad, 191 F.3d at 286; see Robinson I, 175 F.R.D. at 47. In their prayer for relief, the Class Plaintiffs seek "injunctive and equitable relief for the class as a whole," including back and front pay, and also "compensatory damages for individual members of the class who were allegedly the victims of individual acts of intentional discrimination." Robinson II, 197 F.R.D. at 87. No request for punitive damages was made.
 
 B. The Earlier Appeal
 
 6
 In August 1997, the district court denied an earlier request for class certification because it held that the Class Plaintiffs had failed to satisfy the prerequisites for a class action set out in Rule 23(a)(2), (3).[1] Specifically, the district court found that the Class Plaintiffs had failed to demonstrate commonality and typicality. See Robinson I, 175 F.R.D. at 47-49.
 
 
 7
 "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) (per curiam). Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Id. (internal quotation marks omitted).
 
 
 8
 Central to the district court's finding that the Class Plaintiffs had failed to demonstrate commonality and typicality were the following: (1) Metro-North satisfied the district court that the "plaintiffs' statistics are inadequate to carry their burden of establishing commonality as to the company-wide class" because "they fail to take account of the fact that different Metro-North positions have materially different individual rates of discipline and of promotion associated with them;" and (2) Metro-North's "overdelegation" of promotion and discipline authority to supervisors is not sufficient to make out a pattern or practice of racial discrimination. Robinson I, 175 F.R.D. at 48-49. We disagreed and held that: (1) the "`statistical dueling'" between the Class Plaintiffs and Metro-North was "not relevant to the certification determination," and that the Class Plaintiffs' statistical report, "in conjunction with the anecdotal evidence, satisfie[d] the Class Plaintiffs' burden of demonstrating" commonality and typicality; and (2) the delegation of discretionary authority to supervisors for discipline and promotion constitutes a policy or practice sufficient to satisfy the commonality requirement. Caridad, 191 F.3d at 292-93.[2] The case was remanded for the district court to consider "whether the requirements of Rule 23(b) [were] met." Id. at 293.
 
 C. The District Court's Ruling After Remand
 
 9
 Following remand, the Class Plaintiffs moved in the district court for (b)(2) class certifications of both the pattern-or-practice disparate treatment claim and the disparate impact claim. See Fed. R. Civ. P. 23(b)(2). As an alternative to class certification of the pattern-or-practice claim in its entirety, Class Plaintiffs sought bifurcation of the claim between the liability and remedial stages, and (b)(2) class certification of just the liability stage. See Fed. R. Civ. P. 23(c)(4)(A) (permitting class certification of "particular issues").
 
 
 10
 The district court denied the motions. Relying on the Fifth Circuit's recent decision in Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998), the district court reasoned that (b)(2) certification of the entire pattern-or-practice disparate treatment claim was inappropriate because the individualized compensatory damage issues would predominate over the class-wide equitable relief question, see Robinson II, 197 F.R.D. at 87-88. Central to the district court's conclusion was its belief that
 
 
 11
 determination of the damages suffered by individual members of the class would require individualized proof and proceedings to determine whether each such member suffered intentional discrimination on the part of his or her department manager, what injuries each such member thereby suffered, what individualized damages were appropriate to redress such injuries, etc.
 
 
 12
 Id. at 88. "[The] multiple individual determinations of damages for the numerous members of the class," the district court concluded, "would overwhelm classwide injunctive issues, from both the standpoint of the individual plaintiffs and the standpoint of the Court." Id.
 
 
 13
 With respect to the Class Plaintiffs' alternative request that the pattern-or-practice claim be bifurcated and the liability stage certified for class treatment as a (b)(2) class, the district court reasoned that "the[] individual determinations will overwhelm the liability phase of any trial nearly as much as they would overwhelm any damages phase, once again rendering class action treatment inappropriate under Rule 23(b)(2)." Id. The district court based this conclusion on its belief that the liability phase would require an individualized determination of each of the "allegedly discriminatory acts of particular department managers in particular individual situations." Id.
 
 
 14
 The district court did not set forth a basis for denying (b)(2) certification of the disparate impact claim.
 
 DISCUSSION
 
 15
 At the outset, we observe that this appeal does not involve consideration of the merits of the case. See, e.g., Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974). Rather, it concerns whether the district court abused its discretion in denying class certification. See Sirota v. Solitron Devices, Inc., 673 F.2d 566, 570-72 (2d Cir. 1982). And, in particular, it requires us to consider how the passage of the Civil Rights Act of 1991 ("the 1991 Act"), see Pub. L. No. 102-166, 105 Stat. 1071, affected the class certification analysis in employee discrimination cases. See generally Daniel F. Piar, The Uncertain Future of Title VII Class Actions After the Civil Rights Act of 1991, 2001 BYU L. Rev. 305. As we discuss below, contrary to both Metro-North's arguments on appeal and the Fifth Circuit's recent decision in Allison, we find that the changes made by the 1991 Act are not fatal to class treatment of employment discrimination claims. But see Allison, 151 F.3d at 409-10.
 
 
 16
 To understand why, it is first necessary to consider the changes brought about by the 1991 Act and to review the elements and evidentiary requirements for pattern-or-practice disparate treatment claims and disparate impact claims.
 
 
 17
 I. THE 1991 ACT AND TITLE VII CLAIMS GENERALLY
 
 A. The 1991 Act
 
 18
 Prior to the passage of the 1991 Act, a plaintiff seeking a monetary award for disparate treatment[3] and disparate impact claims under Title VII could recover only back pay and front pay. Because back pay and front pay have historically been recognized as equitable relief under Title VII, neither party was entitled to a jury trial; both disparate treatment and disparate impact claims were tried to the bench. See, e.g., Lehman v. Nakshian, 453 U.S. 156, 164 (1981); Lincoln v. Bd. of Regents of Univ. Sys. of Ga., 697 F.2d 928, 934 (11th Cir. 1983); Moore v. Sun Oil Co. of Pa., 636 F.2d 154, 156 (6th Cir. 1980); Slack v. Havens, 522 F.2d 1091, 1094 (9th Cir. 1975); see also Pollard v. E.I. du Pont de Nemours & Co., 121 S.Ct. 1946, 1951-52 (2001) (holding that front pay is an equitable remedy). But see Setser v. Novack Inv. Co., 638 F.2d 1137, 1142 (8th Cir.) (holding that back pay is a legal remedy for which the right to a jury trial exists), vacated in part on other grounds, 657 F.2d 962 (8th Cir. 1981) (en banc).
 
 
 19
 The 1991 Act enhanced Title VII's remedial scheme for disparate treatment claims. In addition to back pay and front pay, it authorized the recovery of compensatory and punitive damages in disparate treatment disputes, see 42 U.S.C. § 1981a(a)(1), and afforded a jury trial where these additional remedies are sought, see 42 U.S.C. § 1981a(c). The 1991 Act did not alter the remedial structure for disparate impact claims.
 
 B. Proving Title VII Claims
 
 20
 1. Pattern-or-Practice Disparate Treatment Claims
 
 
 21
 Pattern-or-practice disparate treatment claims focus on allegations of widespread acts of intentional discrimination against individuals. To succeed on a pattern-or-practice claim, plaintiffs must prove more than sporadic acts of discrimination; rather, they must establish that intentional discrimination was the defendant's "standard operating procedure." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 336 (1977).
 
 
 22
 Generally, a pattern-or-practice suit is divided into two phases: liability and remedial.[4] See id. at 360-62. At the liability stage, the plaintiffs must produce sufficient evidence to establish a prima facie case of a policy, pattern, or practice of intentional discrimination against the protected group. See id. at 360. "Plaintiffs have typically depended upon two kinds of circumstantial evidence to establish the existence of a policy, pattern, or practice of intentional discrimination: (1) statistical evidence aimed at establishing the defendant's past treatment of the protected group, and (2) testimony from protected class members detailing specific instances of discrimination."[5] 1 Arthur Larson et al., Employment Discrimination § 9.03[1], at 9-18 (2d ed. 2001); see Mozee v. Am. Commercial Marine Serv. Co., 940 F.2d 1036, 1051 (7th Cir. 1991).
 
 
 23
 Statistics alone can make out a prima facie case of discrimination if the statistics reveal "a gross disparity in [the] treatment of workers based on race." Lopez v. Laborers Int'l Union, Local No. 18, 987 F.2d 1210, 1214 (5th Cir. 1993) (internal quotation marks omitted); see also Ardrey v. United Parcel Serv., 798 F.2d 679, 684 (4th Cir. 1986) ("Since strong statistical evidence, without anecdotal evidence, may in some cases form a prima facie case, a defendant's successful rebuttal of each alleged instance of discrimination weakens, but does not defeat, a plaintiff's class claim. Neither statistical nor anecdotal evidence is automatically entitled to reverence to the exclusion of the other.").
 
 
 24
 If the plaintiffs satisfy this prima facie requirement, "[t]he burden [of production] then shifts to the employer to defeat [it]... by demonstrating that the [plaintiffs'] proof is either inaccurate or insignificant." Teamsters, 431 U.S. at 360.
 
 
 25
 Three basic avenues of attack are open to the defendant challenging the plaintiff[s'] statistics, namely assault on the source, accuracy, or probative force. The defendant can present its own statistical summary treatment of the protected class and try to convince the fact finder that these numbers present a more accurate, complete, or relevant picture than the plaintiff[s]' statistical showing. Or the defendant can present anecdotal and other non-statistical evidence tending to rebut the inference of discrimination. The prudent defendant will follow all three routes if possible, presenting its own version of the numbers game, attempting to undermine the plaintiff[s]' version with specific attacks on [the] validity of the plaintiff[s]' statistics, and garnering non-statistical evidentiary support as well.
 
 
 26
 Larson, supra, § 9.03[2], at 9-23 to 9-24 (footnote omitted).
 
 
 27
 Once the defendant introduces evidence satisfying this burden of production, the trier of fact then must consider the evidence introduced by both sides to determine whether the plaintiffs have established by a preponderance of the evidence that the defendant engaged in a pattern or practice of intentional discrimination. See Teamsters, 431 U.S. at 336. Should the plaintiffs prove a pattern or practice of discrimination, the court may proceed to fashion class-wide injunctive relief. See id. at 361; Dillon v. Coles, 746 F.2d 998, 1004 (3d Cir. 1984).
 
 
 28
 If individual relief such as back pay, front pay, or compensatory recovery is sought in addition to class-wide injunctive relief, the court must conduct the "remedial" phase. Class members enter this second phase with a presumption in their favor "that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." Teamsters, 431 U.S. at 362.
 
 
 29
 The effect of the presumption from the liability stage is to substantially lessen each class member's evidentiary burden relative to that which would be required if the employee were proceeding separately with an individual disparate treatment claim under the McDonnell Douglas framework. Cf. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Rather than having to make out a prima facie case of discrimination and prove that the employer's asserted business justification is merely a pretext for discrimination, see, e.g., Scarlett v. Seaboard Coast Line R.R. Co., 676 F.2d 1043, 1053 (5th Cir. 1982), a class member at the remedial stage of a pattern-or-practice claim need only show that he or she suffered an adverse employment decision "and therefore was a potential victim of the proved [class-wide] discrimination." Teamsters, 431 U.S. at 362. The burden of persuasion then shifts to "the employer to demonstrate that the individual [was subjected to the adverse employment decision] for lawful reasons." Id.
 
 
 30
 If the employer is unable to establish a lawful reason for an adverse employment action, the employee is entitled to individualized equitable relief, which may include back pay and front pay. Class members who seek compensatory damages in addition to individualized equitable relief must then prove that the discrimination caused them "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, [or] other non-pecuniary losses." 42 U.S.C. § 1981a(b)(3).
 
 2. Disparate Impact Claims
 
 31
 Like pattern-or-practice disparate treatment claims, disparate impact claims "are attacks on the systemic results of employment practices." Segar v. Smith, 738 F.2d 1249, 1267 (D.C. Cir. 1984). However, where the inquiry in a pattern-or-practice disparate treatment claim is focused on determining the existence of discriminatory intent, disparate impact claims are concerned with whether employment policies or practices that are neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on the protected group. See Griggs v. Duke Power Co., 401 U.S. 424, 432 (1971) (stating that an employer's "good intent" is irrelevant to a disparate impact claim). "The doctrine seeks the removal of employment obstacles, not required by business necessity, which create built-in headwinds and freeze out protected groups from job opportunities and advancement." EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1274 (11th Cir. 2000) (internal quotation marks omitted).
 
 
 32
 Disparate impact claims involve three stages of proof. The first is the prima facie showing of disparate impact. It requires plaintiffs to establish by a preponderance of the evidence that the employer "uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(k)(1)(A)(i). To make this showing, a plaintiff must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two. See Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 111 (2d Cir. 2001). "Allegations which contend only that there is a bottom line racial imbalance in the work force are insufficient." Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998); see, e.g., Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989) (holding that the challenged employment practice caused the disparity).
 
 
 33
 As with the liability phase of a pattern-or-practice disparate treatment claim, statistical proof almost always occupies center stage in a prima facie showing of a disparate impact claim. See Hill v. Miss. State Employment Serv., 918 F.2d 1233, 1238 (5th Cir. 1990) (per curiam); Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990). See generally 2 Larson, supra, §§ 22.01 to 22.10, at 22-1 to 22-78. The statistics must reveal that the "disparity is `substantial' or `significant.'" Bouman v. Block, 940 F.2d 1211, 1225 (9th Cir. 1991) (quoting Clady v. County of L.A., 770 F.2d 1421, 1428 (9th Cir. 1985); see EEOC v. Joint Apprenticeship Comm., 186 F.3d 110, 117 (2d Cir. 1999). Moreover, the statistics must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity. See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988); Mems v. City of St. Paul, 224 F.3d 735, 740 (8th Cir. 2000).
 
 
 34
 If the plaintiffs succeed in their prima facie showing, the burden of persuasion then shifts to the employer to demonstrate one of two things. The first option is to challenge the plaintiffs' statistical proof. This may be done by introducing evidence to show that either no statistically significant disparity in fact exists or the challenged practice did not cause the disparity. See, e.g., In re Employment Discrimination Litig., 198 F.3d 1305, 1313 (11th Cir. 1999). To successfully contest the plaintiffs' statistical evidence, however, the employer has to convince the factfinder that its "numerical picture is more accurate, valid, or reliable than the plaintiff[s'] evidence." 2 Larson, supra, § 23.02, at 23-3. If the employer is able to do so, it prevails and the case ends.
 
 
 35
 Assuming the employer is unable to successfully contest the plaintiffs' statistics, a second route is for the employer to demonstrate that the challenged practice or policy is "job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i). For example, "[i]n order to sustain a subjective [promotion] practice" that is having a disparate effect on minorities, the defendant-employer would have to establish that "something about the [particular] position requires the selector to make a subjective evaluation of the applicant's abilities." Mozee, 940 F.2d at 1050; see, e.g., Zahorik v. Cornell Univ., 729 F.2d 85, 96 (2d Cir. 1984).
 
 
 36
 If the employer fails to demonstrate a business justification for the policy or practice, see 42 U.S.C. §§ 2000e-2(k)(1)(A)(i), 2000e(m), then the plaintiffs prevail. If the employer succeeds in establishing a business justification, however, the disparate impact claim proceeds to a third stage. See Joe's Stone Crab, Inc., 220 F.3d at 1275. At this third stage, the burden of persuasion shifts back to the plaintiffs to establish the availability of an alternative policy or practice that would also satisfy the asserted business necessity, but would do so without producing the disparate effect. See 42 U.S.C. § 2000e-2(k)(1)(A)(ii), (C); Joe's Stone Crab, Inc., 220 F.3d at 1275. See generally 2 Larson, supra, §§ 24.01 to 24.03, at 24-1 to 24-12.
 
 
 37
 Should the plaintiffs succeed in establishing a Title VII disparate impact violation, the court may order prospective class-wide injunctive relief. See In re Employment Discrimination Litig., 198 F.3d at 1315. Still, in order for an employee to obtain individual relief (e.g., back or front pay), an inquiry similar to the remedial stage of a pattern-or-practice disparate treatment claim is generally required.[6] See 2 Larson, supra, § 31.02, at 31-4. Each class member must show that he or she was among those adversely affected by the challenged policy or practice. If this showing is made, the class member is entitled to individual relief unless the employer in turn can establish by a preponderance of the evidence that a legitimate non-discriminatory reason existed for the particular adverse action. See, e.g., Stephen v. PGA Sheraton Resort, Ltd., 873 F.2d 276, 279 (11th Cir. 1989).
 
 II. STANDARD OF REVIEW
 
 38
 District courts are afforded substantial leeway in deciding issues of class certification. A class-certification decision will "only be overturned if it constitutes an abuse of discretion." Lundquist v. Sec. Pac. Auto. Fin. Servs. Corp., 993 F.2d 11, 14 (2d Cir. 1993) (per curiam) (citation and internal quotation marks omitted). "However, the failure to follow the proper legal standards in certifying a class... is an abuse of discretion." Blyden v. Mancusi, 186 F.3d 252, 269 (2d Cir. 1999) (citation and internal quotation marks omitted) (alterations in original). And, our deference is "noticeably less" when a district court "has denied class status than when it has certified a class." Caridad, 191 F.3d at 291 (quoting Lundquist, 993 F.2d at 14).
 
 
 39
 Having now set forth the elements and evidentiary requirements for Title VII claims and our standard of review for the denial of class certification, we turn to the Class Plaintiffs' contentions on appeal.
 
 
 40
 III. CERTIFICATION OF THE PATTERN-OR-PRACTICE CLAIM
 
 
 41
 With respect to the district court's denial of class certification of the pattern-or-practice disparate treatment claim, the Class Plaintiffs argue that the court abused its discretion (1) by applying an erroneous standard to decide whether to certify the claim under Rule 23(b)(2) or, alternatively, (2) in failing to sever and certify under Rule 23(b)(2) at least the liability phase of the claim.[7]
 
 A. Claim Certification
 
 42
 The Class Plaintiffs contend that the district court utilized an unduly stringent standard in refusing (b)(2) certification of the pattern-or-practice claim. We agree.
 
 
 43
 1. Standards for Assessing Predominance: A Bright-line or Ad Hoc Approach?
 
 
 44
 The (b)(2) class action is intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury. The text of Rule 23(b)(2) is silent as to what extent--if at all--monetary relief may also be sought. The advisory committee's note to Rule 23 contemplates (b)(2) class certification of at least some claims for monetary recovery:
 
 
 45
 This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate.... The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.
 
 
 46
 Fed. R. Civ. P. 23(b)(2), advisory committee note (1966) (emphasis added).
 
 
 47
 To date, our circuit precedent has provided no guidance to lower courts faced with assessing whether "final relief relates... predominantly to money damages" to preclude (b)(2) class treatment. See Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 564 (2d Cir. 1968) ("Subsection (b)(2)... is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory."), vacated on other grounds, 417 U.S. 156 (1974). Without a clear standard discernible from either the text of Rule 23(b)(2) or our circuit precedent, the district court applied a standard recently set forth by the Fifth Circuit in Allison, 151 F.3d at 410. This standard, the incidental damages approach, provides that:[8]
 
 
 48
 [I]n any such action in which both injunctive and monetary relief [are] sought, the inherently individualized nature of the determination of damages... render[s] it predominant, and thereby make[s] class action status under Rule 23(b)(2) inappropriate, except in those rare incidences in which the request for monetary relief [is] wholly "incidental" to the requested injunctive relief.
 
 
 49
 Robinson II, 197 F.R.D. at 87. The district court went on to state that incidental damages
 
 
 50
 should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.
 
 
 51
 Id. at 88 (quoting Allison, 151 F.3d at 415).
 
 
 52
 By limiting (b)(2) certification to claims involving no more than incidental damages, the standard utilized by the district court forecloses (b)(2) class certification of all claims that include compensatory damages (or punitive damages) even if the class-wide injunctive relief is the "form of relief in which the plaintiffs are primarily interested." Hoffman v. Honda of Am. Mfg., Inc., 191 F.R.D. 530, 535-36 (S.D. Ohio 1999); see Allison, 151 F.3d at 429 (Dennis, J., dissenting) (stating that "the majority decrees that if compensatory or punitive damages are prayed for, the case is automatically classified as `predominantly' related to money damages and therefore not certifiable under (b)(2)"). This bright-line prohibition follows from the fact that "[t]he very nature of [compensatory] damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances...." Allison, 151 F.3d at 417; see, e.g., Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1239 (11th Cir. 2000), cert. denied, 121 S. Ct. 1354 (2001). By definition, however, incidental damages must be susceptible to "computation by means of objective standards and not dependent in any significant way on the [class members'] intangible, subjective differences," which compensatory damages clearly are. Robinson II, 197 F.R.D. at 88 (quoting Allison, 151 F.3d at 415); see Smith v. Texaco, Inc., No. 00-40337, 263 F.3d 394, 408-09 (5th Cir. Aug. 22, 2001) ("[C]onsidering Allison and rule 23(b)(2)'s formulation, the instant claims could not have been certified under that paragraph, because compensatory and punitive damages predominate over injunctive/declaratory relief." (emphasis added)).
 
 
 53
 Thus, the question we must decide is whether this bright-line bar to (b)(2) class treatment of all claims for compensatory damages and other non-incidental damages (e.g., punitive damages) is appropriate. For the reasons we discuss below, we believe that it is not and therefore decline to adopt the incidental damages approach set out by the Fifth Circuit in Allison and followed by the district court below. Rather, we hold that when presented with a motion for (b)(2) class certification of a claim seeking both injunctive relief and non-incidental monetary damages, a district court must "consider[] the evidence presented at a class certification hearing and the arguments of counsel," and then assess whether (b)(2) certification is appropriate in light of "the relative importance of the remedies sought, given all of the facts and circumstances of the case." Hoffman, 191 F.R.D. at 536. The district court may allow (b)(2) certification if it finds in its "informed, sound judicial discretion" that (1) "the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed," Allison, 151 F.3d at 430 (Dennis, J., dissenting), and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy.
 
 
 54
 Although the assessment of whether injunctive or declaratory relief predominates will require an ad hoc balancing that will vary from case to case, before allowing (b)(2) certification a district court should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery. See, e.g., In re Sch. Asbestos Litig., 789 F.2d 996, 1008 (3d Cir. 1986).
 
 
 55
 2. Considerations Supporting the Ad Hoc Approach
 
 
 56
 Several considerations inform our decision to adopt this ad hoc approach over the incidental damages standard with its absolute bar to claims seeking compensatory and punitive damages.
 
 
 57
 Foremost among these is the fact that Rule 23 has historically been understood to vest district courts with the authority to determine whether, in their informed discretion, based on the particulars of the case, "the certification prerequisites have been satisfied." Allison, 151 F.3d at 431 (Dennis, J., dissenting). We see no basis for the imposition of a bright-line rule such as the incidental damages standard that would plainly "nullif[y] the district court's legislatively granted... discretion" in making certification determinations. Id. at 430 (Dennis, J., dissenting); see also 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 4.14, at 4-49 (3d ed. 1992) ("No clear standards have been or could be developed... in this area so pregnant with judicial discretion."); cf. Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd., 262 F.3d 134, 139 (2d Cir. 2001) (noting that "the district court is often in the best position to assess the propriety of the class").
 
 
 58
 Additionally, we find that an ad hoc approach satisfies the very concerns that have led other courts to adopt the incidental damages standard--specifically, (1) achieving judicial efficiency, and (2) ensuring due process for absent class members. See Allison, 151 F.3d at 414-15. With respect to the former concern, permitting district courts to assess issues of judicial economy and class manageability on a case-by-case basis is superior to the one-size-fits-all approach of the incidental damages standard. As for the latter concern, as we discuss below, options other than the adoption of the incidental damages approach exist to eradicate the due process risks posed by (b)(2) class certification of claims for damages. Cf., Robinson v. Sears, Roebuck & Co., 111 F. Supp. 2d 1101, 1126 (E.D. Ark. 2000).
 
 
 59
 Where class-wide injunctive or declaratory relief is sought in a (b)(2) class action for an alleged group harm, there is a presumption of cohesion and unity between absent class members and the class representatives such that adequate representation will generally safeguard absent class members' interests and thereby satisfy the strictures of due process. See, e.g., Johnson v. Gen. Motors Corp., 598 F.2d 432, 437 (5th Cir. 1979) ("When only [non-monetary] equitable relief is sought in a[] [class] action involving a cohesive plaintiff group such as a class of black employees at an assembly plant, the due process interests of absent members will usually be safeguarded by adequate representation alone."). This presumption of cohesion and unity continues where incidental damages are also sought because entitlement to such damages does not vary based on the subjective considerations of each class member's claim, but "flow[s] directly from a finding of liability on the... claims for class-wide injunctive and declaratory relief." Allison, 151 F.3d at 416.
 
 
 60
 In contrast, where non-incidental monetary relief such as compensatory damages are involved, due process may require the enhanced procedural protections of notice and opt out for absent class members. This is because entitlement to non-incidental damages may vary among class members depending on the circumstances and merits of each claim.[9] The presumption of class homogeneity and cohesion falters, and thus, adequate representation alone may prove insufficient to protect absent class members interests. See, e.g., Lemon v. Int'l Union of Operating Eng'rs, 216 F.3d 577, 580 (7th Cir. 2000); Jefferson v. Ingersoll Int'l Inc., 195 F.3d 894, 897 (7th Cir. 1999); Johnson, 598 F.2d at 438; see also Ortiz v. Fibreboard Corp., 527 U.S. 815, 846 (1999); Thomas v. Albright, 139 F.3d 227, 236 (D.C. Cir. 1998). Absent class members may therefore need notice that their claims are being pursued in the class action and the opportunity either to opt out and pursue their claims separately or to intervene, should they conclude such active participation would better protect their individual interests.
 
 
 61
 However, certification of a claim for non-incidental damages under Rule 23(b)(2) poses a due process risk because this provision does not expressly afford the procedural protections of notice and opt out. Compare Fed. R. Civ. P. 23(b)(2), with Fed. R. Civ. P. 23(b)(3); see also Fed. R. Civ. P. 23(c)(2), (3). The bright-line prohibition of (b)(2) class treatment for claims seeking non-incidental damages eliminates this risk. It ensures that claims presenting individual specific damage issues that might require heightened due process protections are not certified under (b)(2). But, any due process risk posed by (b)(2) class certification of a claim for non-incidental damages can be eliminated by the district court simply affording notice and opt out rights to absent class members for those portions of the proceedings where the presumption of class cohesion falters--i.e., the damages phase of the proceedings.[10] See Johnson, 598 F.2d at 438; see also Kyriazi v. W. Elec. Co., 647 F.2d 388, 392-95 (3d Cir. 1981). "[A] district court acting under its Rule 23(d)(2) discretionary power[] may require that an opt-out right and notice thereof be given should it believe that such a right is desirable to protect the interests of the absent class members."[11] Holmes v. Cont'l Can Co., 706 F.2d 1144, 1154-55 (11th Cir. 1983) (internal quotation marks omitted); see Fed. R. Civ. P. 23(d)(2), (5); see, e.g., Eubanks v. Billington, 110 F.3d 87, 92-94 (D.C. Cir. 1997); County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1422, 1425 (E.D.N.Y. 1989).
 
 
 62
 To recap, we hold that the district court erred in applying the incidental damages standard to deny the Class Plaintiffs' request for (b)(2) certification of the pattern-or-practice disparate treatment claim. On remand, the district court should reconsider the propriety of (b)(2) certification in light of the standard that we adopt in this opinion. However, because we recognize that, even under the discretionary standard we endorse, the district court may still conclude that (b)(2) certification of the entire pattern-or-practice disparate treatment claim is inappropriate, we turn to consider the Class Plaintiffs' alternate contention that the district court erred in denying partial certification of the claim.
 
 B. Partial Certification
 
 63
 The Class Plaintiffs argue that the district court erred in refusing to bifurcate the pattern-or-practice claim and certify the liability stage of the claim for (b)(2) class treatment. See Fed. R. Civ. P. 23(c)(4). We agree.[12] See, e.g., Morgan v. United Parcel Serv. of Am., Inc., 143 F. Supp. 2d 1143, 1145 (E.D. Mo. 2000); Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 679-80 (D. Colo. 1997); Butler v. Home Depot, Inc., No. C-94-4335 SI, 1996 WL 421436, at *4 (N.D. Cal. Jan. 25, 1996); Morgan v. United Parcel Serv. of Am., Inc., 169 F.R.D. 349, 358 (E.D. Mo. 1996); cf. EEOC v. McDonnell Douglas Corp., 960 F. Supp. 203, 204-05 (E.D. Mo. 1996).
 
 
 64
 Rule 23(c)(4)(A) provides that "an action may be brought or maintained as a class action with respect to particular issues...." Fed. R. Civ. P. 23(c)(4)(A). District courts should "`take full advantage of th[is] provision'" to certify separate issues "in order... `to reduce the range of disputed issues' in complex litigation" and achieve judicial efficiencies. Cent. Wesleyan Coll. v. W.R. Grace & Co., 6 F.3d 177, 185 (4th Cir. 1993) (quoting In re A.H. Robins Co., 880 F.2d 709, 740 (4th Cir. 1989)); accord Hilao v. Estate of Marcos, 103 F.3d 767, 782-87 (9th Cir. 1996); Williams v. Owens-Illinois, Inc., 665 F.2d 918, 929 (9th Cir. 1982). See generally Edward F. Sherman, Class Actions and Duplicative Litigation, 62 Ind. L.J. 507, 516 (1987) (arguing that "[a] class action should not be found unmanageable without [first] exploring the procedural devices available for bringing it in line. These include subclassing and trial of subclass issues separately, bifurcating liability and damages,... [and] appointing a special master for difficult evidentiary matters" (footnotes omitted)).
 
 
 65
 Here, litigating the pattern-or-practice liability phase for the class as a whole would both reduce the range of issues in dispute and promote judicial economy. For example, if the class should succeed and, even assuming that the remedial stage is ultimately resolved on a non-class basis, the issues and evidence relevant to these individual adjudications would be substantially narrowed:
 
 
 66
 By proving that the defendant engaged in a pattern or practice of discrimination, not only is the plaintiff class's eligibility for appropriate prospective relief established, a prima facie case with regard to the remedial phase of the suit, in which relief for individuals is considered, is also made out. Thus, the court presumes that the employer unlawfully discriminated against individual class members. In pattern or practice cases, however, the presumption shifts to the employer not only the burden of production, but also the burden of persuading the trier of fact that it is more likely than not that the employer did not unlawfully discriminate against the individual. Craik v. Minn. State Univ. Bd., 731 F.2d 465, 470 (8th Cir. 1984) (internal citation omitted). If, on the other hand, Metro-North succeeds at the liability stage, the question of whether it engaged in a pattern or practice of intentional discrimination that injured its African-American employees would be completely and finally determined, thereby eliminating entirely the need for a remedial stage inquiry on behalf of each class member.
 
 
 67
 In denying partial certification, the district court apparently did not appreciate these potential benefits because the court had misapprehended the nature of the proof required at the liability stage. Specifically, the district court believed that "discriminatory acts of particular department managers in particular individual situations" would have to be tried and that this would "overwhelm the liability phase." Robinson II, 197 F.R.D. at 88.
 
 
 68
 However, as we have discussed, see supra Part I(B)(1), the liability phase is largely preoccupied with class-wide statistical evidence directed at establishing an overall pattern or practice of intentional discrimination. See Allison, 151 F.3d at 434 (Dennis, J., dissenting). To the extent that evidence regarding specific instances of alleged discrimination is relevant during the liability stage, it simply provides "texture" to the statistics. Such anecdotal evidence is not introduced to establish that the particular instances of discrimination actually occurred nor that the particular employees were in fact victims of discrimination. See Price Waterhouse v. Hopkins, 490 U.S. 228, 244-45 n.10 (1989), superseded by statute on other grounds. Indeed, to ensure that the liability phase remains manageable, the district court may limit the anecdotal evidence as it deems appropriate. See Fed. R. Evid. 403.
 
 
 69
 Accordingly, we hold that the district court abused its discretion in not certifying the liability stage of the pattern-or-practice disparate treatment claim for (b)(2) class treatment.[13]
 
 
 70
 IV. CERTIFICATION OF THE DISPARATE IMPACT CLAIM
 
 
 71
 The Class Plaintiffs contend that the district court abused its discretion in declining to certify the disparate impact claim for (b)(2) class treatment. Here again, we agree.
 
 
 72
 In considering the propriety of the district court's decision to deny (b)(2) certification, we are mindful that, prior to the enactment of the Civil Rights Act of 1991, Title VII discrimination claims seeking both injunctive and equitable monetary relief, like the disparate impact claim here, were routinely certified as (b)(2) classes. See, e.g., Eubanks, 110 F.3d at 92; Probe v. State Teachers' Ret. Sys., 780 F.2d 776, 780 (9th Cir. 1986); Holmes, 706 F.2d at 1152; Alexander v. Aero Lodge No. 735, 565 F.2d 1364, 1372 (6th Cir. 1977), superseded by statute on other grounds; Sperry Rand Corp. v. Larson, 554 F.2d 868, 875 (8th Cir. 1977); Rich v. Martin Marietta Corp., 522 F.2d 333, 341-42 (10th Cir. 1975); Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 250-51 (3d Cir. 1975); Pettway v. Am. Cast Iron Pipe Co., 494 F.2d 211, 256-57 (5th Cir. 1974); 5 Newberg & Conte, supra, § 24.115, at 24-381 to 24-383 & n.930; see also Allison, 151 F.3d at 415 (observing that "back pay could be sought in a (b)(2) class action because, as an equitable remedy similar to other forms of affirmative injunctive relief permitted in (b)(2) class actions, it was an integral component of Title VII's `make whole' remedial scheme").
 
 
 73
 Given that the 1991 Act did not alter the general remedial structure of disparate impact claims, we think it plain that (b)(2) certification of disparate impact claims seeking both injunctive and equitable monetary relief remains appropriate.
 
 
 74
 Metro-North argues that in the instant case we should depart from this general practice because (b)(2) class certification of the disparate impact claim would violate the Seventh Amendment's Trial-by-Jury Clause. We are unpersuaded.
 
 
 75
 The Trial-by-Jury Clause provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. It requires that "when an issue is common to both legal and equitable claims in the same proceeding, [the legal claim] must be tried first to a jury."[14] Jack H. Friedenthal, Mary Kay Kane & Arthur R. Miller, Civil Procedure § 11.5, at 511 (3d ed. 1999); see Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472-73 (1962). This is because, once the right to a jury trial attaches to a claim, it extends to all factual issues necessary to resolving that claim. Where a legal and equitable claim in a suit share a common factual issue, trial of the equitable claim first to a judge would foreclose the later presentation of the common issue to a jury, and thereby violate the trial-by-jury guarantee. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510-11 (1959). Thus, when as here, a pattern-or-practice claim seeking compensatory damages is pled with a disparate impact claim, the pattern-or-practice claim must be tried first to a jury if there are common factual issues necessary to the resolution of each claim.
 
 
 76
 We believe Class Plaintiffs' opportunity to proceed to a jury trial first on the liability phase of the pattern-or-practice claim avoids the possibility of an infringement of the trial-by-jury guarantee. Should the Class Plaintiffs prevail at the liability stage of the pattern-or-practice claim, the court can order class-wide injunctive relief and proceed to the remedial phase. Trial of the disparate impact claim could then be put off until the remedial phase is resolved, thus ensuring that any overlapping factual issues between the two claims will have first been tried to a jury in accordance with the Seventh Amendment. If, however, the Class Plaintiffs should prove unsuccessful at the liability stage with respect to the pattern-or-practice disparate treatment claim, the district court can proceed with a bench trial of the disparate impact claim, relying on answers to special interrogatories from the pattern-or-practice jury for any common factual issues.
 
 V. ADEQUACY OF REPRESENTATION
 
 77
 As a final challenge to class certification, Metro-North argues that the Class Plaintiffs are unlikely to "fairly and adequately protect the interests of the class" as required by Rule 23(a)(4). See Fed. R. Civ. P. 23(a)(4).
 
 
 78
 Two factors generally inform whether class representatives satisfy the Rule 23(a)(4) requirement: "(1) absence of conflict and (2) assurance of vigorous prosecution." 1 Newberg & Conte, supra, § 3.22, at 3-126; cf. Amchem Prods., Inc. v.Windsor, 521 U.S. 591, 625-26 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (internal quotation marks omitted) (alterations in original). Metro-North does not contend that a conflict exists between the Class Plaintiffs and the putative class. Rather, it argues that the Class Plaintiffs may lack an incentive to vigorously pursue the individual relief phases of the claims.
 
 
 79
 Metro-North bases this contention on the fact that, as part of a settlement and stipulation with Metro-North, the Class Plaintiffs agreed only to "participate as named plaintiffs and/or class representatives... in support of the class claims and/or [to] receive any class-wide injunctive relief," "but not [to seek] individual relief of any kind," including monetary relief. Robinson II, 197 F.R.D. at 89-90. Metro-North argues that "[e]ven if some or all of the remaining [Class] Plaintiffs [are] suitable representatives for purposes of prosecuting the claims for liability, they plainly [are] unsuited to serve as representatives for class claims for monetary relief, since none of them [are] entitled to any additional monetary relief." The district court agreed with Metro-North, reasoning that "[t]he net effect [of the settlement and stipulation] is that the [Class Plaintiffs]... have little or no continued interest in pursuing damages on behalf of their fellow class members." Id. at 90.
 
 
 80
 We think it significant that Metro-North has not suggested, nor did the district court find, that the Class Plaintiffs are inadequate representatives to pursue class-wide injunctive relief. Indeed, the settlement stipulation makes clear that the Class Plaintiffs stand to benefit from any class-wide injunctive relief that may be ordered. The Class Plaintiffs, therefore, plainly have an interest in fairly and vigorously pursuing the liability stage of the pattern-or-practice claim and the class-wide aspects of the disparate impact claim because the successful prosecution of one of these portions is a prerequisite for the issuance of class-wide injunctive relief.
 
 
 81
 Metro-North's contention that the Class Plaintiffs may thereafter fail to "vigorously" pursue the individual relief stages is both speculative and premature, and, we believe, is an insufficient basis for rejecting class certification at this juncture. Rather, the preferable course is for the district court to revisit the question of the Class Plaintiffs' "fitness" to represent the class if and when the individual-relief stages of the claims occur. Then, if the district court deems it appropriate, it can direct that class members who are entitled to seek individual relief be named as additional class representatives. See Heit v. Van Ochten, 126 F. Supp. 2d 487, 494-95 (W.D. Mich. 2001); In re Copley Pharm., Inc., 161 F.R.D. 456, 468 (D. Wyo. 1995); see also Fed. R. Civ. P. 23(d)(3), advisory committee note (1966) ("Subdivision 23(d)(3) reflects the possibility of conditioning the maintenance of a class action... on the strengthening of the representation....").
 
 VI. ADDITIONAL OBSERVATIONS
 
 82
 Some additional observations are warranted. First, the district court retains discretion to modify the certification structure on remand as warranted by the progression of the case. See generally Federal Judicial Center, Manual for Complex Litigation § 20.13, at 14-15 (3d ed. 1995). This includes the discretion to sub-class the claims by department or otherwise. See Marisol A., 126 F.3d at 379 ("Rule 23 gives the district court flexibility to certify subclasses as the case progresses and as the nature of the proof to be developed at trial becomes clear."). Indeed, the Class Plaintiffs' attorney conceded at oral argument that this may prove necessary.
 
 
 83
 Second, we emphasize again that today's decision does not relate to the underlying merits of the class claims, as to which we express no opinion.[15]
 
 CONCLUSION
 
 84
 We vacate the district court's judgment dismissing the Class Plaintiffs' suit. The district court is instructed to certify the disparate impact claim under Rule 23(b)(2). The district court is also instructed to reconsider the propriety of certifying the entire pattern-or-practice disparate treatment claim in light of the standard set out herein. If the court determines in its discretion that (b)(2) certification of the entire claim is still inappropriate, then the district court shall bifurcate the pattern-or-practice claim and certify the liability stage under Rule 23(b)(2).
 
 
 85
 Each side to bear its own costs for this appeal.
 
 
 
 NOTES:
 
 
 [1]
 Rule 23(a) provides:
 One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable [numerosity], (2) there are questions of law or fact common to the class [commonality], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality], and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy of representation].
 Fed. R. Civ. P. 23(a).
 
 
 [2]
 I dissented in part. My disagreement with the Caridad majority was not with that portion of the opinion holding that consideration of the dueling expert reports was error, but with that portion that held that Metro-North's practice of delegating personnel decisions constitutes a policy or practice sufficient to satisfy the commonality requirement of Rule 23(a). See Caridad, 191 F.3d at 297 (Walker, J., dissenting in part). It was my view that "in the absence of some affirmative practice leading to discrimination by Metro-North--beyond the quite normal management practice of delegating personnel responsibility to departmental managers under the umbrella of an established anti-discrimination policy"--the district court did not abuse its discretion in concluding that the Class Plaintiffs had failed to demonstrate commonality and typicality. Id.
 
 
 [3]
 Disparate treatment claims under Title VII generally are of two types: (1) individual disparate treatment claims, which primarily follow the the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); and (2) pattern-or-practice disparate treatment claims that center on group-wide allegations of intentional discrimination. See generally 1 Arthur Larson et al., Employment Discrimination § 8.01[4], at 8-13 (2d ed. 2001) (noting that "[t]he McDonnell Douglas pattern of proof is ill-suited to establishing [pattern-or-practice claims]").
 
 
 [4]
 Referring to the first phase of a pattern-or-practice disparate treatment suit as the "liability phase" is something of a misnomer because, as we discuss, the remedial phase also implicates questions of liability, albeit liability to each individual class member rather than to the class as a whole. See Dillon v. Coles, 746 F.2d 998, 1004 (3d Cir. 1984).
 
 
 [5]
 The heavy reliance on statistical evidence in a pattern-or-practice disparate treatment claim distinguishes such a claim from an individual disparate treatment claim proceeding under the McDonnell Douglas framework. See Bell v. EPA, 232 F.3d 546, 553 (7th Cir. 2000) ("In a pattern and practice disparate treatment case, statistical evidence constitutes the core of a plaintiff's prima facie case. Within the McDonnell Douglas individual disparate treatment model, however, statistical evidence is only one small part of a substantial web of evidence indicating pretext."); see also Abrams v. Lightolier Inc., 50 F.3d 1204, 1217 (3d Cir. 1995) (citing Bruno v. W.B. Saunders Co., 882 F.2d 760, 766 (3d Cir. 1990), for the proposition that statistics in an individual disparate treatment case, in "contrast [to a class-action or pattern-and practice case],... need not be so finely tuned" (alterations in original)).
 
 
 [6]
 Both parties correctly note that some cases may require class-wide, rather than individualized, assessments of monetary relief. See, e.g., Catlett v. Mo. Highway & Transp. Comm'n, 828 F.2d 1260, 1267 (8th Cir. 1987) (holding that class-wide equitable monetary relief is permissible where "the number of qualified class members exceeds the number of openings lost to the class through discrimination and identification of the individuals entitled to relief would `drag the court into a quagmire of hypothetical judgments' and result in `mere guesswork'" (quoting Segar, 738 F.2d at 1289-90)); Domingo v. New England Fish Co., 727 F.2d 1429, 1444 (9th Cir. 1984) (same); Stewart v. Gen. Motors Corp., 542 F.2d 445, 452 (7th Cir. 1976) (holding that "the subjectivity of defendant's method of filling job vacancies renders impossible anything like a precise calculation of the pecuniary effects of discrimination"). However, as Metro-North argues, this is the exception, not the rule: Where possible, "there should be... a determination on an individual basis as to which class members are entitled to [recovery] and the amount of such recovery." Shipes v. Trinity Indus., 987 F.2d 311, 318 (5th Cir. 1993); see Domingo, 727 F.2d at 1444.
 
 
 [7]
 See generally 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 4.14, at 4-51 to 4-52 (3d ed. 1992) (noting four alternatives utilized by courts in Rule 23(b)(2) class actions seeking injunctive relief coupled with individual damage claims: (l) limit certification to certain issues; (2) certify the claims for injunctive relief under Rule 23(b)(2) and the damages claims under Rule 23(b)(3); (3) certify the entire class under Rule 23(b)(2) and reconsider the certification category if the class is successful at the liability stage; and (4) certify certain issues and treat other issues as incidental ones to be determined separately after liability to the class has been resolved).
 
 
 [8]
 This approach has been the subject of much discussion by other courts, practitioners and academic commentators. See, e.g., Warnell v. Ford Motor Co., 189 F.R.D. 383, 388-89 (N.D. Ill. 1999); Faulk v. Home Oil Co., 186 F.R.D. 660, 662-65 (M.D. Ala. 1999); Gary M. Kramer, No Class: Post-1991 Barriers to Rule 23 Certification of Across-the-Board Employment Discrimination Cases, 15 Lab. Law. 415, 419-20, 455-69 (2000); Piar, supra, at 315-20; Harvey S. Bartlett, III, Comment, Determining Whether a Title VII Plaintiff Class's "Aim Is True": The Legacy of Allison v. Citgo Petroleum Corp. for Employment Discrimination Class Certification Under Rule 23(B)(2), 74 Tul. L. Rev. 2163, 2175-88 (2000); Nikaa Baugh Jordan, Comment, Allison v. Citgo Petroleum: The Death Knell for the Title VII Class Action?, 51 Ala. L. Rev. 847, 867-75 (2000); Lesley Frieder Wolf, Note, Evading Friendly Fire: Achieving Class Certification After the Civil Rights Act of 1991, 100 Colum. L. Rev. 1847, 1858-61 (2000).
 
 
 [9]
 See generally George Rutherglen, Notice, Scope, and Preclusion in Title VII Class Actions, 69 Va. L. Rev. 11, 26 (1983) (noting that some individual class members may have damage claims "stronger than [those] of most other class members, or worth more, or in other respects sufficiently distinctive" such that "[n]notice and the right to opt out" may be warranted); Steve Baughman, Note, Class Actions in the Asbestos Context: Balancing the Due Process Considerations Implicated by the Right to Opt Out, 70 Tex. L. Rev. 211, 222-25 (1991) (discussing "reasons why the right to assert individual claims may be very important to those opt-out plaintiffs who have disproportionately larger damage claims than most members of the class").
 
 
 [10]
 For example, it appears to us that, for those stages of this case where the interests of the class members are essentially identical (i.e., the liability phase of the pattern-or-practice suit and the class-wide phases of the disparate impact claim), the due process rights of absent class members are ensured by adequate class representation alone. See Ortiz, 527 U.S. at 846 (noting exception to "tradition that everyone should have his own day in court" where "a person, although not a party, has his interests adequately represented by someone with the same interests who is a party" (quotations omitted)); Richards v. Jefferson County, 517 U.S. 793, 800-01 (1996) (stating that "`members of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present'" (quoting Hansberry v. Lee, 311 U.S. 32, 42-43 (1940))); Eubanks v. Billington, 110 F.3d 87, 95 (D.C. Cir. 1997) ("That back pay is characterized as a form of `equitable relief' in Title VII cases does not undercut the fact that variations in individual class members' monetary claims may lead to divergences of interest that make unitary representation of a class problematic in the damages phase." (internal citation omitted)); cf. Martin v. Wilks, 490 U.S. 755, 762 n.2 (1989) (same), superseded by statute on other grounds.
 
 
 [11]
 What due process requires by way of notice in any particular case may vary. Generally, however, notice should: (1) describe succinctly and simply the substance of the action and the positions of the parties; (2) identify the opposing parties, class representatives, and counsel; (3) indicate the relief sought; (4) explain any special risks of being a class member, such as being bound by the judgment; (5) describe clearly the procedures and deadlines for opting out; and (6) note the right of any class member to appear in the action through counsel. See Federal Judicial Center, Manual for Complex Litigation § 30.211, at 225 (3d ed. 1995).
 
 
 [12]
 Because we hold that the liability phase of the pattern-or-practice claim is appropriate for (b)(2) class treatment, we are not required to respond to Class Plaintiffs' contention that the liability phase is also appropriate for (b)(3) class certification.
 When faced with the question in Allison, the Fifth Circuit rejected (b)(3) certification of the liability phase. The Allison court reached this conclusion after applying the (b)(3) predominance requirement to the pattern-or-practice claim "as a whole" and finding that the "individual-specific issues" predominated. Allison, 151 F.3d at 421; see Smith, 263 F.3d at 409-10. The court's strict application of the (b)(3) predominance inquiry to the entire pattern-or-practice claim was based on a footnote in Castano v. Am. Tobacco Co., 84 F.3d 734 (5th Cir. 1996), that stated: "The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial." Id. at 745 n.21.
 Although we do not decide the question, we note that it would be an issue of first impression in this circuit and caution that an alternative understanding of the interaction of (b)(3) and (c)(4) to that set forth in Castano has been advanced elsewhere. See, e.g., Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues."); In re Tetracycline Cases, 107 F.R.D. 719, 727 (W.D. Mo. 1985) ("[T]he appropriate meaning of Rule 23(b)'s predominance requirement, as applied in the context of a partial class certification request under Rule 23(c)(4)(A), is simply that the issues covered by the request be such that their resolution (as a class matter) will materially advance a disposition of the litigation as a whole.").
 
 
 [13]
 The Equal Employment Advisory Council, as amicus curiae on behalf of Metro-North, advances an additional argument against partial class certification which, though speculative at this stage, nonetheless warrants mention: that partial certification would risk violating the Re-examination Clause of the Seventh Amendment. The Re-examination Clause provides in relevant part that "no fact tried by a jury shall be otherwise reexamined in any Court of the United States." U.S. Const. amend. VII. Amicus curiae contends that given the number of members in the putatitve class, the district court is likely to try the remedial phase of each class member's claim before a separate jury from the one that considers the liability phase, and that, should this occur, overlapping factual issues would be presented to the liability-phase and remedial-phase juries in violation of the Re-examination Clause. We disagree.
 Trying a bifurcated claim before separate juries does not run afoul of the Seventh Amendment, but a "given [factual] issue may not be tried by different, successive juries." Blyden, 186 F.3d at 268. As one commentator has observed, avoiding this
 calls for sound case management, not [outright] avoidance of the procedure.... First, the court needs to carefully define the roles of the two juries so that the first jury does not decide issues within the prerogative of the second jury. Second, the court must carefully craft the verdict form for the first jury so that the second jury knows what has been decided already. If the first jury makes sufficiently detailed findings, those findings are then akin to instructions for the second jury to follow.
 Steven S. Gensler, Bifurcation Unbound, 75 Wash. L. Rev. 705, 736-37 (2000) (footnotes omitted); see Simon v. Philip Morris Inc., 200 F.R.D. 21, 36 (E.D.N.Y. 2001) (noting that "different issues can be submitted to different juries as long as they are not presented in a way that causes juror confusion or uncertainty"); Patrick Woolley, Mass Tort Litigation and the Seventh Amendment Reexamination Clause, 83 Iowa L. Rev. 499 (1998). See generally Crane v. Consol. Rail Corp., 731 F.2d 1042, 1049-50 (2d Cir. 1984) (Friendly, J.) (discussing the use of special interrogatories to insulate various elements of a cause of action).
 
 
 [14]
 As the Fifth Circuit noted in Allison,
 The existence of common factual issues is to be distinguished from the existence of overlapping evidence. For purposes of the Seventh Amendment, the question is whether factual issues overlap, thus requiring one trier-of-fact to decide a disputed issue that must be decided by a subsequent jury, not whether the two fact-finders will merely have to consider similar evidence in deciding distinct issues.
 Id. at 423 n.21 (citing Ala. v. Blue Bird Body Co., 573 F.2d 309, 318-19 (5th Cir. 1978)) (emphases in original).
 
 
 [15]
 However, speaking only for myself and recognizing the intense pressures to settle that often follow a class certification decision, see In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1298-99 (7th Cir. 1995), I think it appropriate to observe that two federal judges have previously expressed skepticism about the underlying merits of the claims. See, e.g., Caridad, 191 F.3d at 297 (Walker, J., dissenting in part); Robinson I, 175 F.R.D. at 48-49.