**EEOC, et al., Plaintiffs,**

v.

**MORGAN STANLEY & CO.,
et al., Defendants.**

**No. 01 Civ. 8421(RMB)(RLE).**

United States District Court,
S.D. New York.

July 2, 2004.

454

Elizabeth A. Grossman, Katherine E. Bissell, U.S. Equal Employment Opportunity Commission, New York City, for Plaintiff.

Andrew Johnstone, Brian Kavanaugh, Emily Nicklin, Gabor Balassa, Helen E. Witt, Thomas E. Dutton, Wendy L. Bloom, Kirkland & Ellis, Chicago, IL, Joseph Serino, Jr., Kirkland & Ellis, New York City, for Defendants.

Piper Hoffman, Scott A. Moss, Wayne Outten, Outten & Golden, LLP, New York City, for Allison Schieffelin.

## OPINION & ORDER

ELLIS, United States Magistrate Judge.

## I. INTRODUCTION

The parties in this class action sex discrimination lawsuit have submitted to the Court motions seeking to exclude expert testimony at trial under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). For the reasons discussed below, the motions to exclude Dr. Farrell Bloch, Dr. Barbara Gutek, Dr. William Wecker, Dr. Louis L. Wilde, and Sheldon Wishnick are **DENIED**; the motions to exclude Dr. William Bielby, Dr. June O'Neill, and Dr. Christopher Winship are **DENIED, IN PART,** and **GRANTED, IN PART;** and the motions to exclude Roger Blanc and Dr. Ira T. Kay are **GRANTED.**

## II. BACKGROUND

The motions to exclude proposed experts span topics that include statistics, sociology, and damages. In total, plaintiff Equal Employment Opportunity Commission ("EEOC") has submitted six motions to exclude, plaintiff-intervenor Allison Schieffelin ("Schieffelin") has submitted one, and defendants Morgan Stanley & Co., Inc. and Morgan Stanley Dean Witter ("Morgan Stanley") have submitted three.

Judge Richard M. Berman recently severed the EEOC's pattern and practice claim from Schieffelin's individual claims to conduct separate trials. *See* Order Dated June 3, 2004 at 1–2. Damages will be determined in a third, subsequent proceeding, in a format yet to be determined. *See*

*id.* at 2. The experts challenged in the motions before the Court span all three proceedings.

## III. ANALYSIS

### A. STANDARD OF ANALYSIS

Federal Rule of Evidence ("Rule") 702 governs the admissibility of expert testimony at trial:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702, most recently amended in 2000, reflects the United States Supreme Court's analysis of the admissibility of expert testimony in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). *See* FED.R.EVID. 702 advisory committee's notes at 423. The *Daubert* Court established that Rule 702 imposes a special role on the trial court to function as a "gatekeeper" regarding the admissibility of expert testimony, determining both its relevance and its reliability. 509 U.S. at 589, 113 S.Ct. 2786; *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir.2002). The Court discussed a non-exhaustive list of specific factors that a court may consider, such as (1) whether the expert's theory or technique can be, or has been, tested; (2) whether the theory or technique has been subjected to peer review and publication, (3) the

known or potential rate of error of a particular technique and the existence and maintenance of standards and controls, and (4) whether the technique or theory has been generally accepted in the scientific community. *See Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786.

In its *Kumho* opinion, the Court made clear that the trial court's gatekeeping obligation established under *Daubert* applies to all testimony based on "technical or other specialized knowledge," and not just scientific knowledge. *Kumho,* 526 U.S. at 141, 119 S.Ct. 1167. It also held that the factors articulated in *Daubert* may apply to nonscientific expert testimony, *id.* at 150–51, 119 S.Ct. 1167, but that the trial court possesses flexibility in determining what are reasonable measures of reliability. *Id.* at 152, 119 S.Ct. 1167. The trial court's discretion in determining *how* to assess reliability, the *Kumho* court determined, should be as broad as its discretion regarding *whether* to find relevant evidence reliable. *Id.; see also Robert Zaremba v. G.M.C.,* 360 F.3d 355, 357–58 (2d Cir.2004).

■ In *Daubert,* 509 U.S. at 595, 113 S.Ct. 2786, the Court highlighted the fact that the trial court's focus regarding admissibility must be "solely on principles and methodology, not on the conclusions that they generate." *See also Amorgianos,* 303 F.3d at 266 ("the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions"). Testimony that meets the standards of Rule 702 is still subject to the rigors of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," which provide the "traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786. The Advisory Committee Notes accompanying Rule 702 observe that "the rejection of expert testimony is the exception rather than the rule." FED. R.EVID. 702 Advisory Committee's Notes at 424; *see also U.S. Info. Sys. v. IBEW Local Union No. 3,* 313 F.Supp.2d 213, 226 (S.D.N.Y.2004).

■ Other evidentiary rules impact the trial court's assessment of the admissibility of expert testimony. The trial court must ensure that any testimony admitted meets the basic, foundational standard of admissibility set forth in Rule 104(a) of the Federal Rules of Evidence. *See Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786; FED. R.EVID. 702 Advisory Committee's Notes at 423. The proponent of the proposed testimony continues to have the burden of establishing admissibility under Rule 104(a) by a preponderance of the evidence. *See Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). The Court in *Daubert* also noted that Rule 403 provides the trial court with an important safeguard to limit otherwise relevant evidence. *Id.* at 595, 113 S.Ct. 2786 (*quoting* Jack B. Weinstein, Rule 702 of the Federal Rules of Evidence is Sound: It Should Not be Amended (July 10, 1991), *in* 138 F.R.D. 631, 632).

■ Finally, the trial court's determination regarding the admissibility of expert testimony is reviewed for abuse of discretion, *Zaremba,* 360 F.3d 355 at 357 (*citing G.E. v. Joiner,* 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)), and a "decision to admit or exclude expert scientific testimony is not an abuse of discretion unless it is 'manifestly erroneous.'" *Id.* (*quoting Amorgianos,* 303 F.3d at 265).

## B. STATISTICAL EXPERTS

### 1. Farrell Bloch

■ The EEOC proposes to use the testimony of Dr. Farrell Bloch ("Bloch"),

who holds a Ph.D. in labor economics, to "assist the jury in understanding whether there is a pattern of differential treatment with respect to compensation and promotion between men and women" in Morgan Stanley's Institutional Equities Division ("IED"). EEOC's Memorandum of Law in Opposition to Morgan Stanley's Motion to Exclude Expert Testimony of Dr. Farrell Bloch ("EEOC Mem. Opposing Excluding Bloch") at 1. In particular, the EEOC states that Bloch evaluated pay and promotion information from Morgan Stanley's personnel database, and found that it had paid comparable female employees less than men in similar departments. *Id.* at 2. He also found disparities in the promotion rates between men and women. *Id.* at 3. Bloch prepared an initial report in 2002, and a rebuttal report in 2004.

Morgan Stanley argues that Bloch's testimony should be excluded because his opinions and statistical evidence are unreliable and irrelevant. *See* Morgan Stanley's Memorandum in Support of its Motion to Exclude Testimony of EEOC's Statistician Farrell Bloch at 1–2, 5–6. First, it asserts that Bloch's compensation analyses improperly group together employees performing different job functions, and his rebuttal report fails to cure this problem. *Id.* at 6–10. Because the elements of a pay discrimination case under Title VII require assessment of classmembers' pay in comparison to non-members for "work requiring substantially the same responsibility," *id.* at 6 (*quoting Belfi v. Prendergast,* 191 F.3d 129, 139 (2d Cir. 1999)), Morgan Stanley claims that Bloch's analyses are inadmissible. Second, while Bloch controls for department and length of service, *id.* at 13, Morgan Stanley asserts that his analyses do not incorporate non-discriminatory explanatory factors, and thus have no probative weight. *Id.* at 10–17. Third, Morgan Stanley claims that Bloch's analyses pro-

duce few statistically significant results. *Id.* at 17–21. Finally, Morgan Stanley claims that Bloch (1) improperly expanded his study to non-U.S. citizens in offices outside of the United States, who are not protected under Title VII, *id.* at 22; (2) improperly combined separate sets of results to create the appearance of statistically significant disparities, *id.* at 23–24; (3) used flawed methodology in his 2004 rebuttal report, *id.* at 25–27; (4) inappropriately pooled pay and promotion decisions by different decision makers, *id.* at 27–28; and (5) used software that produced fundamental errors. *Id.* at 28–30.

The EEOC maintains that Bloch's testimony meets the requirements of Rule 702 and is admissible. *See* EEOC Mem. Opposing Excluding Bloch at 1, 4. It asserts that Bloch's use of experience and education are appropriate proxies for performance and productivity, *id.* at 9–10, and that even Morgan Stanley agrees that the variables it identified as missing are not objectively quantifiable. *See id.* at 8. The EEOC argues that these types of disputes should more properly be decided by the jury, and that Morgan Stanley has not come forth with analyses that rebut those of Bloch's studies. *Id.* at 10. The EEOC further notes that Bloch, in his rebuttal report, incorporated new analyses in an attempt to respond to Morgan Stanley's criticisms, and that the new analyses showed little difference. *Id.* at 3. The EEOC also submits a declaration by Bloch dated April 8, 2004, in which he points out that there exists no comprehensive, common database in this case. Declaration of Michael Ranis in Support of EEOC's Response to Morgan Stanley's Motion to Exclude Testimony of Plaintiffs' Expert Dr. Farrell Bloch, Exhibit 1 (Declaration of Dr. Farrell Bloch) at 2. As a result, Bloch states that the parties' analyses and cri-

tiques cannot properly be tested against each other. *See id.*

■ The Court agrees with the EEOC that an evaluation of Bloch's testimony should be left to the jury and that Morgan Stanley's criticisms should be raised on cross-examination. First, Morgan Stanley does not dispute Bloch's academic qualifications. Disputes regarding the proper variables to employ in statistical studies are more properly left for juries to consider and to decide. Moreover, the variables identified by Morgan Stanley's statistical expert, Dr. William Wecker ("Wecker")— "an employee's ability to interact productively with other employees; assistance provided to co-workers; work ethic; participation in firm recruiting, mentoring and training; and competitive market dynamics...." EEOC's Notice of Motion and Motion in Limine to Exclude the Opinions and Testimony of Dr. William Wecker, Exhibit 1 (Report of William Wecker, Ph.D.) at 4—are subjective, and Wecker has identified no data that captures this information.[1] While Morgan Stanley is not required to perform its own analysis, the absence of such analysis means that the effect of such variables is speculative for statistical purposes. The jury can decide whether the objective items used by Bloch are reasonable substitutes. Finally, Wecker presents no data suggesting that characteristics not considered by Bloch vary by gender at Morgan Stanley.[2] At trial, each party may attempt to convince the jury what impact, if any, such variables might have on promotions. The Court thus finds that Bloch's testimony satisfies Rule 702, and concludes that Bloch's analyses are more probative than not. As a result, Morgan Stanley's motion is **DENIED** with respect to this proposed witness.

## 2. William Wecker and Louis L. Wilde

■ Morgan Stanley proposes to use the testimony and opinions of Wecker and Dr. Louis L. Wilde ("Wilde") to challenge the analyses and conclusions of Bloch. Morgan Stanley Memorandum of Law in Opposition to EEOC's Separate Motions to Exclude the Opinions and Testimony of William Wecker and Louis Wilde ("Morgan Stanley Mem. Opposing Excluding Wecker and Wilde") at 1. Wecker's report examines whether Bloch's statistical analyses permitted an inference that disparities in pay and promotion rates were caused by gender. *Id.* The report concludes that Bloch's 2002 compensation analyses "fail to consider the 'two major determinates of compensation: job function and job performance,'" and that Bloch's compensation analysis does not take account of any factors assessed by IED managers. *Id.* at 2. Wecker also repeated and scrutinized Bloch's promotion analyses, and performed affirmative analysis of certain promotion data from 1995 to 2001, and concluded that there are many instances of statistical insignificance. *Id.* at 2–3. Wecker also concluded that Bloch, in his rebuttal report, was not able to cure the deficiencies that Wecker highlighted. *Id.* at 4. Wecker performed statistical analyses to support these criticisms. *Id.* at 4–5. In particular, he notes that Bloch was not able to incorporate "meaningful measures" of job function and job performance. *Id.* at 4.

---

1. *See also* Wecker Report at 5 ("Bloch's analysis of promotions fails to take account of any of the factors that IED managers consider in determining promotions including leadership, teamwork, management ability, integrity, product knowledge, relevant experience, and contribution to profitability.")

2. Merely identifying factors does not end the inquiry. Are we to assume, for example, that women will score lower on such measures as leadership, teamwork, management ability, and integrity?

Wilde's report focuses on the validity of the statistical methods used by Bloch to estimate damages related to the claims that Morgan Stanley under-compensated and failed to promote women. *See id.* at 1. Through statistical analyses of Bloch's data, and his own affirmative analyses, Wilde claims to show that there are methodological shortcomings that render Bloch's calculations unreliable and irrelevant. *Id.* at 3–4. He also contends that his affirmative analysis demonstrates that the rate of growth in compensation is either identical for men or women, or favors women. *Id.* at 3. Wilde concludes that Bloch's 2004 report is also methodologically flawed. *Id.* at 6–7. Finally, Wilde's report critiques the damages claims related to Schieffelin's case, and the expert report of her actuarial expert, Sheldon Wishnick. *Id.* at 1–2.

The EEOC objects to Wecker's testimony and opinions because he did not "construct his own analysis of promotion and compensation practices at IED as a whole," and thus cannot demonstrate that his criticisms of Bloch would have yielded a different outcome. EEOC Memorandum of Law in Support of its Motion in Limine to Exclude Testimony and Opinions of William Wecker, Ph.D. at 1. As a result, the EEOC claims that Wecker's analysis is insufficient to rebut Bloch. *Id.* at 1 (*citing Bazemore v. Friday*, 478 U.S. 385, 400–05, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986)). It also says that Wecker's analyses of two sample groups within the IED are not reliable, irrelevant, and prejudicial because of their limited sample sizes, and are allegedly "tainted" because they were based on certain information provided during a private interview with a Morgan Stanley Managing Director (notes of which were provided to the EEOC only after Bloch's reports were completed). *Id.* at 10–14. The EEOC also argues that Wecker's regression analysis of compensation is "unreliable because it is based on tainted and

incomplete information about job functions which is inconsistent with the Defendants' own database," and does not incorporate worldwide data. *Id.* at 2, 14–21. Finally, the EEOC appears to claim that Wecker's opinion that gender did not play a part in Morgan Stanley's employment decisions is inadmissible because it is an impermissible legal conclusion regarding an ultimate issue in the case. *Id.* at 22–23.

The EEOC finds fault with Wilde's proposed testimony for essentially the same reasons. Because Wilde performed no empirical studies of his own, the EEOC maintains that his criticisms are inadequate and an unreliable rebuttal to Bloch. EEOC's Memorandum of Law in Support of its Motion in Limine to Exclude the Opinions and Testimony of Dr. Louis L. Wilde at 4–11. The EEOC also alleges that Wilde's criticisms are merely speculatory, as well as prejudicial and misleading. *See id.* at 11–12. Moreover, the EEOC argues that Wilde has improperly given his opinion regarding the ultimate legal issue of discrimination because Wilde notes that if multiple regression analyses like Bloch's fail to account for key nondiscriminatory factors, " 'then the statistical analysis cannot be the basis for an inference of intentional gender discrimination.' " *Id.* at 12–13 (*quoting* Declaration of Michael Ranis in Support of EEOC's Motion in Limine to Exclude the Opinions and Testimony of Dr. Louis L. Wilde, Exhibit 2 (Rebuttal Expert Report of Louis L. Wilde) at 5).

■ Morgan Stanley argues that a defendant may rebut a statistical analysis in different ways, and is not required to perform affirmative statistical analyses. Morgan Stanley's Mem. Opposing Excluding Wecker and Wilde at 8 (*citing Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 159 (2d Cir.2001)). It may, for example, point out omitted variables in

plaintiff's analysis. *Id.* at 8–9 (*citing Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 449 (2d Cir.1999); *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 202–03 (2d Cir.1999); *Raskin v. Wyatt Co.*, 125 F.3d 55, 67 (2d Cir.1997)). Morgan Stanley maintains that its experts have performed analyses of IED at the job levels in which Bloch found significant results, albeit selectively in scope. Morgan Stanley's Mem. Opposing Excluding Wecker and Wilde at 9–11. It also states that both Wecker and Wilde's opinion testimony address ultimate issues of fact, which are admissible under Rule 704, and are not impermissible legal conclusions. *Id.* at 11–15.

The Court finds that Morgan Stanley's position is correct. From an admissibility perspective, its experts' critiques and analyses of the EEOC's statistical case are sufficient. More affirmative analyses are not required, *see Robinson*, 267 F.3d at 159, though they may be advisable. As with Bloch's testimony and opinions, the Court finds that the EEOC's issues regarding Wecker and Wilde's analyses impact their probative weight, not their admissibility, and should be leveled at trial. Finally, the EEOC has not sufficiently demonstrated that Wecker and Wilde's statements regarding ultimate issues in the case are legal conclusions, and not factual discussions, that merit exclusion. As a result, the EEOC's motions to exclude Wecker and Wilde's testimony and opinions are **DENIED.**

## C. SOCIAL SCIENCE EXPERTS

### 1. William Bielby

 The EEOC argues that Dr. William Bielby, a social scientist with a Ph.D. in Sociology, will "assist the Court and Jury in understanding the findings from social science research about factors that create and minimize workplace gender bias, including how gender stereotypes affect personnel decisions, organizational policies and practices that create barriers to career advancement for women, and the kind of policies and procedures that effectively minimize gender bias, particularly in male-dominated work environments." EEOC's Memorandum of Law in Opposition to Defendants' Motion to Strike Testimony of Dr. William Bielby ("EEOC's Mem. Opposing Excluding Bielby") at 1–2. In particular, it offers Bielby's testimony to provide background summaries of pertinent social science research about gender bias in the workplace, *id.* at 4, which form the basis for his conclusions about the IED. Declaration of Thomas E. Dutton in Support of Morgan Stanley's Motion to Exclude Testimony of Plaintiffs' Expert William T. Bielby, Exhibit A (Expert Report of William T. Bielby, Ph.D., November 22, 2002) ("Bielby Report") at 6. The EEOC also offers his testimony in order to apply this social science research to the present case, and through a "social framework analysis," to assess whether gender bias exists in the IED. *See* EEOC's Mem. Opposing Excluding Bielby at 4. Bielby explains that his report is not intended to be a scientific study about discrimination at Morgan Stanley, Declaration of Thomas E. Dutton in Support of Morgan Stanley's Motion to Exclude Testimony of Plaintiffs' Expert William T. Bielby, Exhibit A (Expert Rebuttal Report of William T. Bielby, Ph.D., February 9, 2004) at 5, but relies upon widely accepted social science research about gender bias in the workplace to examine the IED's policies and practices. *Id.* Bielby finds that a male-dominated work environment exists at the IED, Bielby Report at 21–26; the IED utilizes "arbitrary and subjective procedures" for pay and promotion decisions, *id.* at 26–32; Morgan Stanley's policies and practices regarding equal employment opportunities do not adequately detect and minimize

gender bias, *id.* at 32–42; and that Schieffelin was negatively impacted by gender barriers while working at the IED. *Id.* at 42–45.

Morgan Stanley claims that Bielby is unqualified as an expert because he lacks "first hand knowledge" of Morgan Stanley by basing his opinions on deposition testimony; his opinions are based on subjective views; his background is not in social psychology, human resources, or personnel policies; and he has done no studies of the IED. Morgan Stanley's Memorandum of Law in Support of Its Motion to Exclude Testimony of Plaintiffs' Expert William Bielby ("Morgan Stanley's Mem. to Exclude Bielby") at 17–18. Taking issue with his methodology, Morgan Stanley argues that Bielby's opinions are unreliable. *Id.* at 19–21 (*citing* statements by Morgan Stanley experts Dr. Christopher Winship ("Winship") and Dr. Barbara Gutek ("Gutek"), *see infra*, that critique his methodology as without scientific basis and omitting inconsistent literature; further claiming that a "social framework analysis" is not an accepted approach. Morgan Stanley's Reply Memorandum of Law in Support of its Motion to Exclude Testimony of Plaintiffs' Expert William Bielby at 1–2).

Morgan Stanley also contends that Bielby's testimony is not relevant and inadmissible under Evidence Rules 401 and 403 because his opinions would supplant the roles of counsel and the jury in making inferences, and because he "impermissibly shifts the burden of proof to Morgan Stanley." Morgan Stanley's Mem. to Exclude Bielby at 23–26. Bielby allegedly supplants the role of counsel by arguing that discrimination existed, and the role of the jury by assessing credibility of testimony. *Id.* at 23. Morgan Stanley additionally claims Bielby's opinions that "stereotyping is automatic," the IED is a " 'male dominated culture,' " and the IED's policies are

" 'arbitrary and subjective,' " are irrelevant to making out the EEOC's Title VII claims since they cannot prove intentional discrimination. *Id.* at 25. It maintains that his opinions will not assist the jury because he misapplies the burden of proof by indicating that gender bias is inevitable in the IED without appropriate safeguards lacking at Morgan Stanley. *Id.* Relying on Rule 403, Morgan Stanley states that Bielby's "mere expectation that gender discrimination is on average the cause of any gender disparities in IED pay and promotion and that Schieffelin experienced gender bias" will confuse and mislead the jury by indicating the outcome that the jury should reach. *Id.* at 26 (*citing Rowe Entm't, Inc. v. William Morris Agency*, 2003 WL 22272587, at *10 (S.D.N.Y. Oct.2, 2003)).

The EEOC counters that Bielby is well-qualified, EEOC Mem. Opposing Excluding Bielby at 2–4, and that he has not proffered opinions outside of his area of expertise. *Id.* at 19–23. The EEOC also asserts that these opinions are based on sound, judicially-accepted social science methodology. *See id.* at 9–11. It states that Bielby has used reliable methods in applying this social science research to the present case. *Id.* at 11–18. The EEOC points out that courts do not require independent studies of data, and allow analysis of documents as done by Bielby. *Id.* at 18. It contends that defendants' issues regarding Bielby's use of social science literature and research go to the weight, not the admissibility, of Bielby's testimony. *See id.* at 25–29.

After reviewing Bielby's background and his reports, which demonstrate acceptable research and application, the Court finds that he is qualified and that his methodology is reliable in this case. Morgan Stanley's critiques of Bielby's testimony, including that he does not rely on first-

hand knowledge or studies, that his opinions are subjective, that a social framework methodology is not accepted, and that he omits inconsistent literature, are factors that should be evaluated and weighed by the trier of fact.

Bielby's discussion about the susceptibility of the IED's pay and promotion procedures to gender bias would tend to confuse the jury about the burden of proof. The gist of his conclusion is that in a male-dominated context where men are in charge women are discriminated against unless certain safety measures are instituted. He therefore asks the jury to begin with the expectation of discrimination and compel Morgan Stanley to prove that it took enough steps to prevent it.

His argument, that given Morgan Stanley's "male-dominated work environment," its discretionary pay and promotion system "has the features that social science research demonstrates creates significant barriers to equal employment opportunity for women," Bielby Report at 32, provides a theoretical explanation for discrimination. While his testimony would be helpful in understanding the mechanism of discrimination, and consequently, in fashioning an appropriate remedial scheme, it may not illuminate the initial inquiry, i.e., whether Morgan Stanley discriminates.

Bielby may properly testify about gender stereotypes, and about how these stereotypes may have affected decisions at Morgan Stanley. He may also testify regarding whether policies and practices relating to gender bias might affect employees' utilization of an equal employment opportunity program, but may not seek to show that alleged deficiencies in such a program are evidence of discrimination.

Morgan Stanley's motion to exclude the testimony of Bielby is **DENIED, IN PART** and **GRANTED, IN PART,** to the extent that Bielby shall not be allowed to discuss his theories regarding whether the IED's "arbitrary and subjective" pay and promotions procedures, in conjunction with a male-dominated workplace, result in discrimination.

## 2. Barbara Gutek

■■ Morgan Stanley says that Gutek, a psychologist, will testify that Bielby's opinions are unscientific, since there exists no scientific research and no consensus in the field about what policies and practices are best for handling complaints of discrimination. Morgan Stanley's Memorandum in Opposition to EEOC's Motion in Limine to Exclude Testimony and Opinions of Defendants' Proposed Rebuttal Expert Barbara Gutek ("Morgan Stanley's Mem. Opposing Excluding Gutek") at 3–4. In her report, Gutek states that "[i]n the absence of any evidence that there is a documented set of effective practices, there is likewise no evidence that there is a better or more effective way of handling or investigating complaints than the processes used by Morgan Stanley." EEOC's Notice of Motion and Motion in Limine to Exclude the Opinions and Testimony of Defendants' Proposed Rebuttal Expert Dr. Barbara Gutek, Exhibit 1 (Report of Barbara A. Gutek, Ph.D.) at 8. Morgan Stanley also asserts that Gutek will explain that Bielby inappropriately relies on her academic work to extrapolate about stereotypes in the workplace. Morgan Stanley's Mem. Opposing Excluding Gutek at 5.

The EEOC argues that Gutek's testimony and opinions are unreliable because her earlier writings and testimony in other litigation are actually consistent with Bielby's claims regarding anti-discrimination policies and procedures. EEOC's Memorandum of Law in Support of its Motion in Limine to Exclude the Opinions and Testimony of Defendants' Proposed Rebuttal Expert Dr. Barbara Gutek at 4. It also

states that Gutek has provided opinions in other litigation about gender stereotyping in the workplace, apparently applying her academic work to a broader context than in her present report, and thus rendering her allegation not credible and unreliable. *Id.* at 10–11. Morgan Stanley responds to the EEOC's arguments by saying that Gutek's opinions are reliable, and establish the unreliability of Bielby. Morgan Stanley's Mem. Opposing Excluding Gutek at 7.

Gutek's expert report and supporting affidavit are detailed, clear, and straightforward, and pass a threshold evaluation of reliability. Her disputes about Bielby's methodology, as discussed in the previous section, should be assessed and weighed by the trier of fact. Her testimony and opinions are directly relevant to the claims in the case, including Morgan Stanley's ninth affirmative defense that the "EEOC cannot seek relief on behalf of those who failed to make use of Defendants' internal complaint procedures...." Defendants' Answer to Plaintiff Equal Employment Opportunity Commission's Amended Complaint at 4. The EEOC's motion to exclude Gutek is **DENIED.**

### 3. Ira T. Kay

█ Morgan Stanley proposes to use the testimony and opinions of Dr. Ira T. Kay ("Kay"), a compensation consultant who holds a Ph.D. in Labor Economics, to rebut testimony proposed by Bielby and Bloch. *See* Morgan Stanley's Memorandum in Opposition to EEOC's Motion in Limine to Exclude the Testimony and Opinions of Defendants' Proposed Expert Ira Kay ("Morgan Stanley's Mem. Opposing Excluding Kay") at 1–2. It states that Kay assesses how "Morgan Stanley's compensation system fits into the compensation customs and practices of Wall Street firms and explains how legitimate business

reasons motivate financial service firms to adopt the type of compensation system that Morgan Stanley uses." *Id.* at 1. Kay challenges Bielby's designation of the IED's compensation process as "arbitrary," characterizing it instead as "a qualitative system that requires management judgment" that helps to retain top employees and maintain Morgan Stanley's success. Declaration of Michael Ranis in Support of EEOC's Motion to Exclude Testimony and Opinions of Defendants' Proposed Rebuttal Expert Witness, Ira T. Kay, Exhibit 1 (Expert Report of Ira T. Kay, Ph. D.) ("Kay Report") at 2–4. Kay also claims that there is a "major flaw" in Bloch's statistical analysis, Morgan Stanley's Mem. Opposing Excluding Kay at 1, because he fails to factor in differences in job functions for people with the same officer title. Kay Report at 2.

The EEOC objects to Kay's proposed testimony and opinions, alleging that they are not relevant and will not assist the jury. EEOC's Memorandum of Law in Support of its Motion to Exclude Opinions and Proposed Testimony of Defendants' Proposed Rebuttal Expert Witness, Dr. Ira T. Kay, Ph.D. ("EEOC's Mem. to Exclude Kay") at 2. Among other arguments, it points out that Morgan Stanley's conformity to industry customs and practices regarding compensation is irrelevant to disproving discrimination, EEOC's Reply Memorandum in Further Support of Its Motion in Limine to Exclude Testimony and Opinions of Ira Kay, Ph.D. ("EEOC's Reply Mem. to Exclude Kay") at 3–5; that the "qualitative" nature of the IED's compensation process is undisputed, EEOC's Mem. to Exclude Kay at 3; and that any implication that a successful company consequentially has a non-discriminatory compensation system is illogical and irrelevant. *See* EEOC's Reply Mem. to Exclude Kay at 7–10. The EEOC also contests Kay's qualifications, the sufficiency of his data,

and the broadness of his applications. *See* EEOC's Mem. to Exclude Kay at 9–24. It seeks to have Kay's observations regarding Bielby and Bloch excluded for lack of scientific rigor, and argues that Kay must be excluded if the Court excludes the opinions of Bielby and Bloch. *Id.* at 24–25.

Morgan Stanley, in its opposition to the EEOC's motion, says that Kay is qualified, and that his opinions are reliable, relevant, and admissible. Morgan Stanley's Mem. Opposing Excluding Kay at 7–12. It states that the EEOC's criticisms of Kay's testimony are "misguided and based upon a fundamental misreading of his report." *Id.* at 12. It argues that Kay's testimony is largely based on his personal experience and facts of which he has personal knowledge, and that he did not have to conduct a scientific study before commenting on industry custom and practice or critiquing Bloch. *Id.* at 15–18. Morgan Stanley claims that even if the Court excludes Bielby and Bloch, Kay's opinions should be admitted since his testimony will still be relevant, admissible, and helpful to the jury. In particular, it will be useful to respond to Bielby's assertions about the "arbitrary" nature of the IED compensation system, and to assist the jury to understand the financial services industry, its pay practices, and how Morgan Stanley compares with the industry. *Id.* at 7–10, 18–19.

The Court finds that Kay's proposed testimony and opinions are irrelevant to the present case, and will not assist the trier of fact. The fact that Morgan Stanley's compensation is consistent with industry practices is irrelevant to a determination of whether the company discriminated. Companies have imposed discriminatory practices on a variety of systems. Similarly, Morgan Stanley's success within the system is irrelevant to an evaluation of discrimination.[3] Certainly, the EEOC could not make the converse claim in prosecuting an employer.

Though the parties may differ regarding the implications of Morgan Stanley's discretionary compensation structure, the mechanics of the system itself is not a contested point. Kay's attempt to create an issue by latching on to the word "arbitrary" is unavailing. It is clear from the context that Bielby relates the term to "subjective," and not to "whimsical."

Kay also points to certain factors not included by Bloch, but this is not his major focus and does not rescue his overall testimony. Taken as a whole, the Court finds that Kay's proposed testimony would ultimately be unhelpful and superfluous. The EEOC's motion to exclude the testimony and opinions of Kay is **GRANTED.**

### 4. June O'Neill

Morgan Stanley proposes to use the testimony and opinions of Dr. June O'Neill ("O'Neill"), a labor economist, as a rebuttal witness to (1) demonstrate that "not all disparities in pay between men and women are due to discrimination by employers," but factors such as gender roles and occupational choices; (2) to present O'Neill's statistical analysis of gender differences in occupations that it claims "is highly relevant to an understanding of the factors that affect women's career paths, pay, and promotion at Morgan Stanley;" (3) to critique Bielby's assertions regarding Morgan Stanley's "arbitrary and subjective" pay and promotion system, the impact of gender stereotypes at the IED, and to

---

**3.** Many entities were successful while America's workforces excluded women from certain positions. In part, discrimination was not a disadvantage because it was widespread. Put another way, an employer can afford to treat women discriminatorily if women do not possess viable alternatives with other employers.

point out that Schieffelin was one of the highest-paid individuals at her level and thus was not harmed; (4) to critique Bloch's lack of controlled factors, the paucity of his findings regarding gender differences for compensation at the officer levels, and other methodological concerns regarding his original and rebuttal analyses; and (5) to present a cohort study regarding compensation based in the IED in North America, which shows that there were no statistically significant differences between men and women hired in the professional positions between 1990 and 1992, and 1993 and 1995. Morgan Stanley's Memorandum of Law in Opposition to EEOC's Motion in Limine to Exclude the Opinions and Testimony of Dr. June O'Neill ("Morgan Stanley's Mem. Opposing Excluding O'Neill") at 1, 3–9.

The EEOC contends that O'Neill's opinions "regarding the average numbers of women in broad occupational categories throughout the national economy, her stereotypical use of certain characteristics of those occupations and her belief that systemic gender discrimination does not exist under her concept of 'economic theory'" are irrelevant to the pay and promotion claims in this case. EEOC's Memorandum of Law in Support of its Motion in Limine to Exclude Testimony and Opinions of June O'Neill, Ph.D. at 1. According to the EEOC, O'Neill is not an expert regarding gender stereotyping, and is not competent to rebut Bielby's opinions, *id.* at 2; her statistical analysis is not reliably applied to the facts of the case, *id.* at 10; her opinions critiquing Bloch's methodology are based on "hypothetical conjecture," and are insufficient to rebut his analyses, *id.* at 12–15; and her limited review of IED employees is not scientific, likely to mislead the jury, and prejudicial. *Id.* at 2.

Morgan Stanley responds by asserting that O'Neill is qualified, and that her methodology is widely accepted. Morgan Stanley's Mem. Opposing Excluding O'Neill at 1. It also states that her critiques of Bielby and Bloch, and her statistical and cohort studies, satisfy the requirements of Rule 702 and *Daubert. Id.* Morgan Stanley claims that O'Neill's opinions regarding women's roles in the workplace and the concept that "choice is a legitimate explanation for differences observed in the workplace" are relevant and do not promote stereotypes. *Id.* at 10–11.

 The Court agrees with the EEOC in that it finds that the majority of O'Neill's proposed testimony and opinions are not relevant to the claims in this case. Her overview of women's status in the workforce, her focus on gender disparities in the securities and financial markets and at the IED, and her statistical analysis of gender differences in occupations might be relevant if there were a discriminatory hiring claim in this case. These aspects of her testimony and opinions do not provide support for pay or promotion analyses, however.

 O'Neill's critiques of Bloch's methodology and her limited cohort study based upon IED compensation data, on the other hand, are relevant to the claims in this case, will be helpful to the trier of fact in evaluating the weight of the parties' methodologies, and are admissible. As a result, the EEOC's motion to exclude O'Neill is **GRANTED, IN PART,** and **DENIED, IN PART.**

### 5. Christopher Winship

 Morgan Stanley proffers Winship, a social science methodologist, to assert that Bielby did not use valid scientific methodology in his report. Morgan Stanley's Memorandum in Opposition to EEOC's Motion in Limine to Exclude Testimony and Opinions of Christopher Winship, Ph.D. ("Morgan Stanley's Mem. Op-

posing Excluding Winship") at 2. Among other things, Winship critiques Bielby's use of social science literature, and points out flaws—chiefly of omission—in Bielby's analyses regarding the IED and Schieffelin's case. *See* Declaration of Michael Ranis in Support of EEOC's Motion in Limine to Exclude the Opinions and Testimony of Dr. Christopher Winship, Exhibit 1 (Expert Report of Christopher Winship, Ph.D.) ("Winship Report") at 3–10.

The EEOC claims that Winship does not have expertise in Bielby's areas of specialty, and is improperly being used for rebuttal purposes. EEOC's Memorandum of Law in Support of Its Motion in Limine to Exclude Testimony and Opinions of Christopher Winship, Ph.D. at 1. It characterizes Winship as an "expert at inferring 'degrees of confidence' from research and drawing inferences from randomized experimentation." *Id.* at 2. Because he does not have expertise regarding the particular issues at trial, the EEOC maintains that his discussion will not assist the jury. *Id.* at 2–3. For similar reasons, the EEOC also objects to Winship's positive assessment of the pay and promotion system at Morgan Stanley; his discussions of complaint procedures at Morgan Stanley, and the effect of sex stereotyping on Schieffelin. Plaintiff EEOC's Reply Memorandum in Support of EEOC's Motion in Limine to Exclude the Testimony and Opinions of Christopher Winship, Ph.D. at 4–6.

Morgan Stanley argues, however, that Winship is qualified to discuss the methodology used by Bielby, even if he is not an expert in the substantive area. Morgan Stanley's Mem. Opposing Excluding Winship at 2. Indeed, Morgan Stanley notes that Winship admits that he does not attempt "to make a substantive judgment about what's true at Morgan Stanley." *Id.* at 7 (*quoting* Declaration of Helen E. Witt in Support of Morgan Stanley's Memoran-

dum in Opposition to EEOC's Motion in Limine to Exclude Testimony and Opinions of Christopher Winship, Exhibit B. (Winship Deposition, February 16, 2004), at 146).

The Court finds that Winship is qualified, and that his testimony and opinions are reliable and relevant from a threshold, admissibility standpoint. From the Court's review of Winship's 2002 Report, his affidavit dated March 24, 2004, and his deposition testimony, there are no serious evidentiary shortcomings with the basic sufficiency of his data, his principles or methods, or their applications to the facts of this case. Further evaluations of methodology should properly be assigned to the trier of fact, who should determine what weight to ascribe to Winship's statements.

Winship's positive assertions regarding Morgan Stanley's pay and promotion procedures ("Although I am not an expert in human resources, after reading of [sic] the deposition testimony and an interview with Bruce Cohen and others on 12/19/02, I concluded that this was the most rigorous, thorough, and extensive evaluation process that I had heard of." Winship Report at 38), however, are outside the realm of his expertise as a social science methodologist. Winship's affirmative statements regarding Morgan Stanley's pay and promotion process are thus inadmissible. Winship's critiques of Bielby's analyses of complaint procedures and Schieffelin's exposure to sex stereotyping, on the other hand, do not cross over into positive assertions and are therefore permissible. As a result, EEOC's motion to exclude is **DENIED, IN PART,** and **GRANTED, IN PART.**

### D. OTHER EXPERTS

#### 1. Rober Blanc

■ Morgan Stanley intends to have Roger Blanc ("Blanc") testify that defen-

dants did not engage in a securities violation called "parking," or "prearranged sham transactions where no market risk was being transferred." Morgan Stanley's Memorandum in Opposition to Allison Schieffelin's Motion to Exclude Expert Testimony from Roger Blanc ("Morgan Stanley Mem. Opposing Excluding Blanc") at 1. Morgan Stanley states that Blanc's testimony is necessary to respond to Schieffelin's charge that, as part of Morgan Stanley's retaliation against her for filing a complaint regarding gender discrimination, she was reassigned from a client when, in fact, Morgan Stanley was engaging in illegal parking with that client. *See id.* at 1–3.

Schieffelin objects to Blanc's testimony because she claims that Blanc, an attorney, is not qualified as an expert in securities and securities markets, but only about securities law. Memorandum of Law of Allison Schieffelin in Support of Motion to Exclude Expert Testimony from Roger Blanc at 1, 4–6. In addition, his testimony will consist of legal conclusions, which are an improper area of opinion testimony. *Id.* at 7–9. Finally, Schieffelin claims that Blanc's testimony will not be helpful to the jury because it only addresses whether Morgan Stanley engaged in "parking," and does not respond to Schieffelin's broader allegations that the disputed transactions were illegal and guaranteed no loss to the client. *Id.* at 10–15.

Morgan Stanley, in its opposition, asserts that the jury should not be charged with the question of whether Morgan Stanley engaged in illegal parking because of its collateral nature to the dispute, but that if it is required to respond to this argument, it should be permitted to present evidence to refute the allegation. Morgan Stanley Mem. Opposing Excluding Blanc at 1, 14–15. Morgan Stanley agrees that opinion testimony stated as legal conclu-

sions are not permitted. *Id.* at 8. It asserts, however, that Blanc's testimony is "more similar to factual conclusions that embrace an ultimate issue than an ultimate legal conclusion" and thus is admissible. *Id.* at 12 (*quoting SEC v. U.S. Environmental Inc.*, 2002 WL 31323832, at *4 (S.D.N.Y. Oct.16, 2002)). In particular, it notes that Blanc bases his conclusions on the facts that he has analyzed, and refrains from stating his opinions in judicial terminology. *See id.* at 12–13. In addition, Morgan Stanley states that legal testimony may be more readily admitted when it is regarding a collateral, complex issue, and that the trial court may "polic[e] the fine line between admissible and inadmissible testimony during trial." *Id.* at 13. Finally, it claims that Schieffelin is now attempting to "run away from her parking allegations," which were the specific accusations of illegality that she made in her charge of discrimination with the EEOC. *See id.* at 14–15. Morgan Stanley asserts that "[t]he jury in this case will not be asked whether the disputed transactions were unlawful; rather, the jury will be asked whether they believe Morgan Stanley's reason for Schieffelin's reassignment" from the client account in question. *Id.* at 15.

Blanc's testimony regarding Schieffelin's allegations of "parking" or broader securities violations by Morgan Stanley may be relevant and helpful to the jury to properly assess her claim of retaliation. Blanc's opinions expressed in his expert report and deposition testimony are overly couched in legal language and reach legal conclusions, however. *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.1994); *United States v. Scop*, 846 F.2d 135, 140 (2d Cir.1988). His arguments would be more appropriate when presented by defense counsel themselves, rather than by an expert. Moreover, Blanc's opinions would provide only a partial response to

Schieffelin's allegation of illegality, as "parking" is only one specified activity. In addition, Blanc's testimony does not address whether Schieffelin's managers *believed* the activities were illegal. It appears, however, that Schieffelin may not be competent to express a legal opinion on Morgan Stanley's activities. It would probably be appropriate to eliminate testimony on this issue altogether. Schieffelin's motion to exclude Blanc is **GRANTED**.

### 2. Sheldon Wishnick

 Schieffelin intends to have Sheldon Wishnick ("Wishnick"), an actuary, present his estimates of her lost earnings and employee benefits for purposes of determining damages in her individual case. Memorandum of Law of Allison Schieffelin in Opposition to Motion to Exclude Expert Testimony from Sheldon Wishnick ("Schieffelin's Mem. Opposing Excluding Wishnick") at 1. Wishnick posits calculations for Schieffelin based on three different scenarios: 1) termination in October 2000 from her position as an Executive Director; 2) not being promoted to Managing Director in 2000; and 3) not being promoted to Managing Director in 1997. *Id.* at 1–2. Schieffelin asserts that these calculations are based on the "conservative assumption" about her income stream that she will retire completely by age 49, in 2010. *Id.* at 2. Wishnick subtracts from these damages Schieffelin's anticipated earnings from the date of her termination. *Id.* at 2. Schieffelin claims that these earnings will be modest because she has not been able to find comparable work and is seeking to enter another field by completing a master's degree in Interactive Technology. *Id.* at 2–3. Including lost income, the value of her pension, and forfeited stocks and options, Wishnick estimates Schieffelin's loss in the three scenarios noted above to be: (1) $32,995,837; (2)

$63,485,408; and (3) $72,153,790. Declaration of Scott A. Moss in Opposition to Motion to Exclude Expert Testimony from Sheldon Wishnick, Exhibit A (Actuarial Report and Analysis: Lost Earnings and Employee Benefits for Allison Schieffelin by Sheldon Wishnick) at 1.

Morgan Stanley objects to Wishnick's testimony, claiming that it is based on unsupported, unreliable, and irrelevant assumptions. Morgan Stanley's Memorandum in Support of its Motion to Exclude the Testimony of Sheldon Wishnick at 1, 13. It questions Wishnick's assumptions that Schieffelin would not be able to find suitable employment for six years after her termination, and that her income when she does begin to work will be *"less than 5%* of the amount Wishnick claims she would have made at Morgan Stanley." *See id.* at 1. Morgan Stanley also alleges that Wishnick uses comparators supplied to him by Schieffelin's counsel without evaluating whether they are the proper ones. *Id.* Finally, it questions Wishnick's assumption that Schieffelin would have remained at the Executive Director or Managing Director level with increases in income for the ten years between her termination and her anticipated retirement. *Id.* at 1–2. It states that, in fact, "[m]ost Executive and Managing Directors do not stay at Morgan Stanley for ten years, and there is no basis for Wishnick to assume Schieffelin's compensation levels would have continued to grow rapidly forever with no risk of that compensation diminishing." *Id.* at 2.

Schieffelin, in her opposition, counters that Wishnick's assumptions are reasonable and well-founded. Schieffelin's Mem. Opposing Excluding Wishnick at 13. She argues that Wishnick estimated her compensation growth and career length properly, *id.* at 16–22, and appropriately determined mitigation data. *Id.* at 23–24. In

addition, she asserts that the burden of uncertainty regarding her career growth and length after a finding of liability should rest with the defendants, not the plaintiff. *Id.* at 25–27. In general, she states that Morgan Stanley's disputes with Wishnick are not regarding admissibility, but rather concern substantive matters that should be resolved through summary judgment or trial proceedings. *Id.* at 3–4.

Morgan Stanley's issues with Wishnick's assumptions, from the amount of Schieffelin's projected income to the appropriate comparators to be used, are the types of issues that should be decided by the jury and tested through cross-examination. Morgan Stanley's motion to exclude Wishnick is **DENIED.**

### IV. CONCLUSION

For the reasons discussed above, the parties' motions to exclude expert testimony are **DENIED, IN PART, AND GRANTED, IN PART.**