**UNITED STATES of America et al., Plaintiffs,**

v.

**CITY OF NEW YORK et ano., Defendants.**

**No. 07 Civ. 2083 (WHP).**

United States District Court, S.D. New York.

July 2, 2009.

Jeannette Anne Vargas, Esq., New York, NY, for Plaintiff United States.

Howard Wien, Esq., New York, NY, for Plaintiff–Intervenors.

Bruce Rosenbaum, Esq., NYC Law Department, New York, NY, for Defendants.

### MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

Plaintiff, the United States of America (the "United States"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), against the City of New York (the "City") and the NYC Department of Transportation ("DOT"). The United States alleges that

Defendants engaged in a pattern or practice of discrimination on the basis of sex in hiring bridge painters. On June 27, 2007, this Court granted requests to intervene by the Structural Steel and Bridge Painters of Greater New York, Local Union No. 806 (the "Union"), as well as individual plaintiffs Esfrosini Katanakis ("Katanakis"), Helen Jackson ("Jackson"), Lulia Oliskovicz ("Oliskovicz"), and JoAnne Rush ("Rush") (collectively "Plaintiff–Intervenors"). Plaintiffs seek injunctive relief, including job offers with retroactive seniority and back pay. Defendants move for summary judgment. For the following reasons, Defendants' motion for summary judgment is granted in part and denied in part.

## BACKGROUND

In 1992, the City's Department of Personnel administered a civil service examination for Bridge Painters. (Defendants' Local Rule 56.1 Statement of Undisputed Facts dated Oct. 31, 2008 ("Def. 56.1") ¶ 1.) Defendants hired Bridge Painters from the civil service eligible list established as a result of that exam until it expired in 1994. (Def. 56.1 ¶ 5.) Despite DOT's repeated requests for a new Bridge Painter examination, the City's Department of Citywide Administrative Services [1] ("DCAS") did not administer another Bridge Painter Examination until 2004. (Def. 56.1 ¶ 7.) The City claims its inaction was justified by the lack of examiner resources and the small number of Bridge Painters who were hired provisionally in the years after 1994. (Def. 56.1 ¶¶ 8, 13, 39, 55, 68.)

While DOT planned to renovate its locker room space to accommodate females in the mid–1990s, the modifications were not completed until approximately 2002. (Def. 56.1 ¶ 9; Deposition transcript of Earlene Powell dated Mar. 26, 2008 ("Powell Dep. Tr.") at 264.) In any event, Defendants assert that other locker rooms were available for use by female employees. (Powell Dep. Tr. at 267.) Plaintiffs challenge that assertion and contend that there were no facilities for women until 2003. (Responsive Statement of Plaintiff Pursuant to Local Civil Rule 56.1(b) dated Dec. 10, 2008 ("Pl. 56.1") ¶ 9.)

## I. Hiring Periods

### A. The 1997–1998 Hiring Period

In October 1997, DOT posted a vacancy announcement seeking applications for the position of Bridge Painter (the "1997 Posting"). (Def. 56.1 ¶ 13.) Initially, applications were limited to current full-time DOT employees. (Def. 56.1 ¶ 14.) DOT claims that its Bridge Painter Division had a general practice of disseminating vacancy announcements internally and then, if vacancies remained, opening the positions to all City employees. (Def. 56.1 ¶ 14.) Plaintiffs claim that this practice is peculiar to the Bridge Painter Division, and that DOT typically publicizes vacant positions through newspaper advertisements and other channels. (Pl. 56.1 ¶ 14.) The 1997 Posting was re-advertised in February 1998 to all City employees (the "1998 Posting"). (Def. 56.1 ¶ 15.)

The minimum qualifications for Bridge Painter include: "Five years of full-time satisfactory experience acquired within the last ten years in painting bridges, towers, tanks and other elevated steel structures, using rigging and scaffolding" (the "Five Year Experience Requirement") and a commercial driver's license. (Def. 56.1 ¶¶ 17–18; Declaration of Bruce Rosenbaum dated Oct. 31, 2008 ("Rosenbaum Decl.") Ex. F at 00002: Job Vacancy Notice; Rosenbaum Decl. Ex. H at 00044:

---

1. In 1996 the New York City Department of Personnel merged with the New York City Department of General Services to form DCAS. (Def. 56.1 ¶ 2.)

Bridge Painter Job Description.) The 1997 and 1998 Postings required "[p]ossession of a Class B Commercial Driver License valid in the State of New York." (Job Vacancy Notice at 00001–02.) In contrast, the DCAS job description for Bridge Painter provided: "[c]andidates will be appointed subject to the receipt of a Class B Commercial Driver License valid in the State of New York with no restrictions, within the probationary period." (Bridge Painter Job Description at 00044.)

DOT received applications from twenty-two male and two female candidates as a result of the 1997 and 1998 Postings. Jackson and Rush were the females. Neither received an interview. (Def. 56.1 ¶¶ 19–21, 23.)

Defendants contend that Jackson's résumé revealed that she did not meet the Five Year Experience Requirement. (Def. 56.1 ¶ 21.) According to Defendants, the Five Year Experience Requirement is calculated by determining whether an applicant has worked as a Bridge Painter for a total of 60 months within the last ten years. (Deposition transcript of Joseph Lamberson dated Jan. 14, 2008 ("Lamberson Dep.") at 129, 131.) In New York, depending on the severity of the weather, Bridge Painters customarily work eight or nine months per year. (Deposition transcript of Jure Dzida dated Mar. 6, 2008 at 17–18.) DCAS General Examination Regulations, which are "applicable to all examinations conducted by [DCAS] for positions in the competitive, non-competitive and labor classes," provide: "A maximum of one year of experience will be credited for each 12 month period." (Reply Declaration of Bruce Rosenbaum dated Dec. 24, 2008 ("Rosenbaum Reply Decl.") Ex. YY: DCAS General Examination Regulations at Regulation E.1, E.12.2.) Joseph Lamberson, DOT's Bridge Division Director of

Administration, testified that a determination about whether an applicant satisfies the Five Year Experience Requirement is not easily discernable from a résumé, and often requires a conversation with the applicant. (Lamberson Dep. at 129–30.)

Plaintiffs dispute Defendants' construction of the Five Year Experience Requirement. According to Plaintiffs, neither the job postings nor the job description for Bridge Painter state that an applicant must have sixty months experience. (Job Vacancy Notice at 00001–02; Bridge Painter Job Description at 00044.) Plaintiffs also assert that DOT interviewed five male candidates with fewer than sixty months of qualifying work experience within the last ten years and hired two of them. (Pl. 56.1 ¶ 21.)

Defendants assert that then Acting Director of Bridge Painting, Michael Tohl ("Tohl"), and the Bridge Division Deputy Director Earlene Powell ("Powell"), attempted to contact Rush to schedule an interview, but the phone number listed on her resume was not current. (Def. 56.1 ¶ 22.) According to Rush, Powell also sought the Union's help in reaching her. (Pl. 56.1 ¶ 22(a).) When they finally spoke, Powell informed Rush that she would not be interviewed because she did not possess a commercial driver's license. (Pl. 56.1 ¶ 22(a).) Powell denies ever speaking with Rush. (Def. 56.1 ¶ 26.) After learning that a male applicant—Nicholas Krevatas—was hired, Rush discovered that applicants could obtain a commercial driver's license during their probationary year as a Bridge Painter. (Def. 56.1 ¶ 24.) Plaintiffs also maintain that two males received job offers in 1998, even though they provided out-of-date telephone numbers on their applications. (Pl. 56.1 ¶ 22(b).) Ten males were hired as a result of the 1998 interviews.[2] (Def. 56.1 ¶ 35.)

2. Plaintiffs contend that an eleventh male hired in September 2000, was interviewed in

### B. *The 1999 Hiring Period*

In December 1998, Leonid Levit ("Levit") replaced Tohl as Director of Bridge Painting. (Def. 56.1 ¶ 34.) In July 1999, DOT posted a vacancy notice for Bridge Painters limited to DOT employees (the "1999 Posting"). (Def. 56.1 ¶ 39; Rosenbaum Decl. Ex. F at 00003: The 1999 Posting.) Twelve men and two women applied. Jackson applied but was not interviewed. (Def. 56.1 ¶¶ 41–42.) The parties disagree whether Jackson had the requisite five years of bridge painting experience when she applied in 1999. (Pl. 56.1 ¶ 42(b); Def. 56.1 ¶ 42.)

Oliskovicz, the other female, was interviewed. (Def. 56.1 ¶ 43.) DOT claims that candidates were ranked on the basis of their interview performance. (Def. 56.1 ¶¶ 48–49.) While DOT anticipated extending an offer to Oliskovicz, budgetary constraints permitted only two offers. (Def. 56.1 ¶¶ 50–51.)

Plaintiffs assert that DOT has no policy requiring the ranking of candidates based on their interviews. (Pl. 56.1 ¶ 48.) Plaintiffs also maintain that DOT informed Union representatives at a labor-management meeting that Oliskovicz had not been hired because DOT lacked changing facilities for females. (Pl. 56.1 ¶ 51(a); Deposition transcript of Joseph Ramaglia dated Feb. 26, 2008 at 23, 26–27.) Finally, Plaintiffs assert that the budgetary constraints arguments is a red herring because DOT hired a third male in 2000. (Pl. 56.1 ¶ 49(b).)

### C. *The 2001 Hiring Period*

In April 2001, another Bridge Painter vacancy was posted within DOT. In May 2001, the posting was circulated citywide (the "2001 Posting"). (Def. 56.1 ¶ 55.) Sixteen males and one female applied. (Def. 56.1 ¶ 59.) DOT interviewed Katanakis, the female, and a number of males. (Def. 56.1 ¶ 61.) According to the deposition testimony, Levit coached several interviewees, including Katanakis. (Deposition transcript of Michele Vulcan dated Apr. 14, 2008 at 61; Powell Dep. Tr. at 226.) Three males were recommended for hiring, but no offers were made because of budgetary constraints. (Pl. 56.1 ¶ 63; Def. 56.1 ¶ 66.)

### D. *The 2002 Hiring Period*

In June/July 2002, a final vacancy notice was posted (the "2002 Posting"). (Def. 56.1 ¶ 68.) However, no applicant was interviewed due to budgetary constraints. (Def. 56.1 ¶ 69.) DOT has not hired any provisional Bridge Painters since August 2000. (Def. 56.1 ¶ 71.)

## II. *EEOC Filing*

On March 6, 2002, Oliskovicz filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Yu Decl. Ex. 31: Oliskovicz EEOC Charge of Discrimination.) Rush, Katanakis, Jackson, and the Union filed EEOC charges on March 20, March 28, March 29, and April 8, 2002, respectively. (Def. 56.1 ¶¶ 73–76.)

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Davis v. Blige*, 505 F.3d 90, 97 (2d Cir.2007). The burden of demonstrating the absence

1998. (Pl. 56.1 ¶ 35.)

of any genuine dispute as to a material fact rests with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505; *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005).

## II. *The United States's Pattern–or–Practice of Disparate Treatment Claim*

### A. *Legal Standard*

■■■ "Pattern-or-practice disparate treatment claims focus on allegations of widespread acts of intentional discrimination against individuals." *Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 158 (2d Cir.2001). "To succeed on a pattern-or-practice claim, plaintiffs must prove more than sporadic acts of discrimination; rather, they must establish that intentional discrimination was the defendant's 'standard operating procedure.' " *Robinson*, 267 F.3d at 158 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). The Government is often the plaintiff in a pattern-or-practice action, and it has the "initial burden ... to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers." *Teamsters*, 431 U.S. at 360, 97 S.Ct. 1843. To establish liability, "the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a *prima facie* case that such a policy existed. The burden then shifts to the employer to defeat the *prima facie* showing of a pattern or practice by demonstrating that the Government's proof is either inaccurate or insignificant." *Teamsters*, 431 U.S. at 360, 97 S.Ct. 1843.

■ Pattern-or-practice claims differ significantly from individual disparate treatment claims. "In a case involving individual claims of discrimination, the focus is on the reason(s) for the particular employment decisions at issue.... In contrast, the initial focus in a pattern-or-practice case is not on individual employment decisions but on a pattern of discriminatory decisionmaking." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir.2001) (internal citations and quotation marks omitted); *see also Robinson*, 267 F.3d at 158 n. 5 (distinguishing pattern-or-practice disparate treatment claims from individual disparate treatment claims proceeding under the *McDonnell Douglas* framework).

■■■ "[P]laintiffs must produce sufficient evidence to establish a *prima facie* case of a policy, pattern, or practice of intentional discrimination against the protected group.... Plaintiffs have typically depended upon two kinds of circumstantial evidence to establish the existence of a policy, pattern, or practice of intentional discrimination: (1) statistical evidence aimed at establishing the defendant's past treatment of the protected group, and (2) testimony from protected class members detailing specific instances of discrimination." *Robinson*, 267 F.3d at 158 (internal citations omitted). While most pattern-or-practice claims are proved through the use of statistics, "when there is a small number of employees, anecdotal evidence alone can suffice." *Sidor v. Reno*, No. 95 Civ. 9588 (KMW), 1997 WL 582846, at *10 (S.D.N.Y. Sept. 19, 1997); *see also McReynolds v. Sodexho Marriott Services, Inc.*, 349 F.Supp.2d 1, 7 (D.D.C.2004) ("To establish a prima facie pattern or practice case, 'the plaintiffs must, by statistical evidence, individual testimony, *or* a combina-

tion of the two, make a showing adequate to raise the inference that employment decisions were predicated on an illegal criterion.'" (quoting *McKenzie v. Sawyer*, 684 F.2d 62, 71 (D.C.Cir.1982))) (emphasis added); *E.E.O.C. v. LA Weight Loss*, 509 F.Supp.2d 527, 533 (D.Md.2007) (" 'This prima facie showing may in a proper case be made out by statistics alone, or by a cumulation [*sic*] of evidence, including statistics, patterns, practices, general policies, or specific instances of discrimination.'" (quoting *E.E.O.C. v. Am. Nat'l Bank*, 652 F.2d 1176, 1188 (4th Cir.1981))).

### B. *Analysis of the Evidence*

To prove its *prima facie* case of disparate treatment, the United States argues: (1) the provisional hiring of Bridge Painters lacked clear standards; (2) DOT treated male and female applicants differently; and (3) DOT offered shifting explanations for Defendants' refusal to hire female Bridge Painters.

■ There are genuine issues of material fact regarding the criteria employed to select Bridge Painters. While Defendants contend that DOT's Five Year Experience Requirement means sixty months of Bridge Painting work within the last ten years, neither the job postings nor the Bridge Painter job description refer to a sixty month requirement. The DCAS regulation that "[a] maximum of one year of experience will be credited for each 12 month period," appears to apply only to "examinations conducted by [DCAS]." However, the City has not administered a civil service examination for Bridge Painter since 1992. Moreover, even if the DCAS regulations apply, it is not clear that DOT measures the experience requirement for Bridge Painters in months rather than years. The ambiguity could give rise to an inference that DOT employed the Five Year Experience Require-

ment to disqualify certain applicants—in this case, females.

The same holds true for the requirement that applicants possess a Class B Commercial Driver License. While DOT's job postings require possession of such a license, the Bridge Painter job description specifically notes the existence of a one-year grace period to acquire a commercial driver's license. "Such 'subjective and ad hoc' employment practices, ... bolster plaintiffs' claim that defendants discriminated against class members." *Wright v. Stern*, 450 F.Supp.2d 335, 366 (S.D.N.Y. 2006) ("Multiple courts have observed that greater possibilities for abuse ... are inherent in subjective definitions of employment selection ...." ) (internal quotation marks and citation omitted).

Plaintiffs' offer evidence that DOT treated male and female applicants differently. For example, while Defendants assert that Jackson was not interviewed because she lacked the minimum sixty months of experience, Plaintiffs identify five males who were interviewed even though they did not have sixty months of bridge painting experience. In addition, the Bridge Division's Director of Administration testified that interviews of applicants are appropriate to determine whether they possess the requisite sixty months of experience. No such inquiry was made of Jackson. There is also a dispute as to whether Rush was told that she was not being interviewed because she did not have a commercial driver's license. Moreover, an Equal Employment Opportunity ("EEO") representative testified that a male interviewee was coached during the course of his interview. While Defendants argue that other interviewees, including Katanakis, were also coached, this presents another issue for trial.

Other factual disputes warranting a trial include Defendants claim that Oliskovicz

was not offered a job offer in 1999 because only two offers could be made for budgetary reasons. However, a third hire in 2000 calls that budgetary justification into question. Plaintiffs also point to statements by DOT officials that female Bridge Painters had not been hired because of the lack of locker rooms or other changing facilities for them. These comments are contradicted by other testimony that DOT had plans as early as 1994 to renovate locker room space to accommodate female Bridge Painters as well as testimony that locker rooms existed in 1999 which could have been used by females. *See LA Weight Loss,* 509 F.Supp.2d at 533 (denying summary judgment on pattern-or-practice claim due to disputes in the testimonial evidence).

Accordingly, Defendants' motion for summary judgment dismissing the pattern or practice claim by the United States is denied.

## III. *Plaintiff–Intervenors' Claims*

### A. *Pattern–or–Practice Claims*

 Courts have held that an individual cannot maintain a private, non-class, pattern-or-practice claim. *See, e.g., Rambarran v. Mount Sinai Hosp.,* No. 06 Civ. 5109(DF), 2008 WL 850478, at *8 (S.D.N.Y. Mar. 28, 2008) (collecting cases); *Tucker v. Gonzales,* No. 03 CIV 3106(LTS)(FM), 2005 WL 2385844, at *5 (S.D.N.Y. Sept. 27, 2005) (dismissing pattern-or-practice claim as duplicative of disparate treatment claim); *see also Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 759 (4th Cir.1998) ("individuals do not have a private, non-class cause of action under § 1981 or Title VII"); *Celestine v. Petroleos de Venezuella S.A.,* 266 F.3d 343, 356 (5th Cir.2001) ("As the plaintiffs are before us in their individual capacities ... the *Teamsters* method is not available to

them"); *Bacon v. Honda of Am. Mfg., Inc.,* 370 F.3d 565, 575 (6th Cir.2004) ("We therefore hold that the pattern-or-practice method of proving discrimination is not available to individual plaintiffs."). Given the significant difference between individual disparate treatment claims and pattern-or-practice claims, this Court holds that individuals cannot maintain a private, non-class, pattern-or-practice claim against Defendants. To the extent Plaintiff–Intervenors rely on a pattern-or-practice theory of disparate treatment, Defendants' motion for summary judgment is granted and those individual pattern-or-practice claims are dismissed.

### B. *Individual Disparate Treatment Claims*

#### 1. *Timeliness*

 The Plaintiff–Intervenors also bring individual disparate treatment claims pursuant to 42 U.S.C. § 2000e–5, the section that governs Title VII actions by private parties. "Filing an administrative complaint with the EEOC is a statutory prerequisite to maintaining a Title VII action in the district court." *Pikulin v. City Univ. of N.Y.,* 176 F.3d 598, 599 (2d Cir. 1999). "An employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency." *Pikulin,* 176 F.3d at 599 (citing 42 U.S.C. § 2000e–5(e)).

Oliskovicz filed her charge on March 6, 2002; therefore, any acts prior to May 10, 2001 are time barred. Because Rush filed her charge on March 20, 2002, acts prior to May 24, 2001 are time barred. Since Katanakis filed her charge on March 28, 2002, any act prior to May 28, 2001 is time barred.[3] And any acts occurring prior to June 2, 2001 are time barred with respect

---

3. Defendants concede that Katanakis's claim is not time barred.

to Jackson, because she filed her charge on March 29, 2002.

■ The statute of limitations for an unlawful employment practice begins to run when the employee "knew or had reason to know of the injury serving as the basis for [her] claim." *Harris v. City of N.Y.*, 186 F.3d 243, 247 (2d Cir.1999). Therefore, the question is when each Plaintiff–Intervenor knew or had reason to know of DOT's decision not to interview or hire her.

Jackson first applied after she saw the 1998 Posting. While the record does not indicate when the ten or eleven hires occurred, there is no dispute that they were hired before the 1999 Hiring Period. Therefore, Jackson knew or had reason to know of DOT's decision not to interview or hire her by July 1999—the date of the 1999 Posting. Accordingly, DOT's allegedly discriminatory failure to interview Jackson in 1998 is time barred. As for Jackson's application in response to the 1999 Posting, there is no evidence that she was told she would not receive an interview. The next job vacancy notice was made available to all City employees in May 2001. Therefore, Jackson had reason to know that she was not granted an interview sometime in May 2001. Accordingly, DOT's allegedly discriminatory failure to interview Jackson in 1999 is also time barred.

Rush also applied pursuant to the 1997 and 1998 Postings. However, Rush claims that sometime in 1998, after speaking with Powell, she was informed that she was not being interviewed because she did not possess a commercial driver's license. Thus, Rush knew or had reason to know of DOT's decision not to interview her no later than 1998. Accordingly, her claim is time barred.

In 1999 DOT interviewed Oliskovicz after she responded to the 1999 Posting. That posting was only distributed among DOT employees. While no one told Oliskovicz that DOT would not be extending a job offer to her, the next job posting within DOT occurred in April 2001. Therefore, Oliskovicz had reason to know that she was not offered a Bridge Painter position in April 2001. Thus, DOT's allegedly discriminatory failure to hire Oliskovicz in 1999 is also time barred.

■ To bring themselves within the statute of limitations, the Plaintiff–Intervenors invoke the continuing violation exception. "[A] continuing violation may be found where there is proof of specific ongoing discriminatory polices or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994). However, the Supreme Court has limited the continuing violation doctrine by holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The Court identified "termination, failure to promote, denial of transfer, or refusal to hire" as examples of such discrete discriminatory acts. *Morgan*, 536 U.S. at 114, 122 S.Ct. 2061. Accordingly, the discriminatory acts alleged by the Plaintiff–Intervenors are discrete acts and do not constitute a continuing violation.[4]

---

4. While *Morgan* did not address whether the continuing violation exception could be applied to pattern-or-practice claims, see *Morgan*, 536 U.S. at 115 n. 9, 122 S.Ct. 2061, this Court need not reach that question because of its holding that Plaintiff–Intervenors cannot bring individual pattern-or-practice claims.

## 2. *McDonnell Douglas Framework*

 Title VII's disparate treatment provision "makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Ricci v. DeStefano,* —— U.S. ——, 129 S.Ct. 2658, 2672, 174 L.Ed.2d 490 (2009) (citing 42 U.S.C. § 2000e–2(a)(1)). A plaintiff in a discriminatory failure-to-hire context must establish as part of a *prima facie* case that the position remained open after plaintiff was rejected, and the employer continued seeking applicants who shared the same qualifications. *See Gaffney v. Dep't of Info. Tech. and Telecommc'ns,* 536 F.Supp.2d 445, 462 (S.D.N.Y.2008). When a position is not filled and a defendant continues to seek similarly-qualified applicants, a reasonable inference of discrimination may be drawn. *See Gaffney,* 536 F.Supp.2d at 463. Here, DOT never filled the provisional Bridge Painter position for which Katanakis applied and has not hired a provisional Bridge Painter since August 2000. Moreover, while DOT circulated a job posting for Bridge Painter in June 2002, it never scheduled any interviews. Accordingly, Katanakis fails to establish a *prima facie* case of disparate treatment and Defendants' motion for summary judgment is granted dismissing her claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion for summary judgment dismissing Plaintiff–Intervenors' claims is granted. Defendants' motion for summary judgment dismissing the pattern-or-practice claim of the United States is denied.

SO ORDERED.